# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3100

_____

Vladimir Ivanovich Krasnopivtsev,    *
                                *
           Petitioner,            *
                                *    Petition for Review of an Order of
      v.                    *    the Board of Immigration Appeals.
                                *
John Ashcroft, Attorney General of    *          [PUBLISHED]
the United States of America,       *
                                *
          Respondent.         *

_____

Submitted: May 12, 2004
Filed: September 3, 2004

_____

Before BYE, HANSEN, and HAMILTON,[1] Circuit Judges.

_____

HANSEN, Circuit Judge.

Vladimir Ivanovich Krasnopivtsev petitions this court for review of an order by the Board of Immigration Appeals (BIA). Krasnopivtsev argues that he suffered persecution in Georgia on the basis of his Russian ethnicity and Baptist religion, and he fears future persecution upon removal from the United States. After carefully reviewing the record, we deny Krasnopivtsev's petition for review.

_____

[1]The Honorable Clyde H. Hamilton, United States Circuit Judge for the Fourth Circuit, sitting by designation.

I.

Krasnopivtsev, a 50-year-old citizen of Georgia and an ethnic Russian, entered the United States in April 1999 as a nonimmigrant visitor for pleasure, with authorization to stay until October 1999. He overstayed his visit, and the Immigration and Naturalization Service (INS) commenced removal proceedings against him in December 1999. He conceded deportability but requested asylum, withholding of removal, voluntary departure, and relief under Article 3 of the Convention Against Torture.

At a hearing before an Immigration Judge (IJ), Krasnopivtsev and his sister Vera testified. Krasnopivtsev testified that he is a citizen of Georgia, an ethnic Russian, and a Baptist who attends church but has not been baptized. Krasnopivtsev was not a member of a Baptist church while he lived in Georgia, but he went to church with his parents when he was young, and he attended church occasionally as an adult. His mother, father, two brothers and one sister, all active Baptists, were granted refugee status in the United States in the 1990s. His father had been a deacon in the church in Tbilisi, Georgia, and his brother was a Baptist pastor. Krasnopivtsev did not elaborate on their experiences but testified only that his family was "persecuted." He mentioned that his father's uncle had been executed in 1929 due to his religious beliefs. Krasnopivtsev's daughter, who was approximately 27 years old at the time of the hearing, still lives in Georgia. She is not a Baptist but is an ethnic Russian and has had no known problems living there. His sister Lydmila and her daughter also still live there. Lydmila is a Baptist. There is no evidence that they have suffered any harm. Krasnopivtsev said he fears he would be killed or handicapped if he returned to Georgia, and although he is of Russian ethnicity, he could not be sent to Russia.

Krasnopivtsev testified that he encountered some troubles while he was in school due to his family's religion, such as name-calling and ridicule for going to

2

church instead of believing in communism. This occurred in the 1960s, well before the communist Soviet Union dissolved in 1991. The IJ considered only events subsequent to this change in the country's condition.

Krasnopivtsev testified that in 1995, a police officer stopped him on the street, asked him for documents, and took him to the police station. The officer pointed a gun to his head and asked, "[A]ren't you Russian[s] afraid to live around here?" (R. at 107.) The officer, who was drunk, then started shooting around randomly, and a bullet grazed Krasnopivtsev. Immediately, other police took him to the hospital for treatment and instructed him to tell the doctor that he fell down the stairs, if asked. The police took him home after the hospital visit. Krasnopivtsev said that after this incident, he was often stopped by the police and taken to do work for them without pay. He assumed this was because he was Russian, and he feared that, if he refused, they might make up a reason to put him in prison. Krasnopivtsev also testified that Georgians would stop him on the street and harass him because he was Russian. They would ask if he had cigarettes and would hit him if he did not.

In 1997, Krasnopivtsev traveled from Georgia to Russia on a Soviet passport. While he was in Russia, there was an incident where he was accused of stealing a cow and was beaten, but he was not arrested. He offered this testimony to demonstrate that although he was Russian, he was not accepted in Russia and was not firmly resettled in another country.

In 1999, he returned to Georgia. Krasnopivtsev applied for an international passport in Tbilisi. To complete the application, he was required to obtain from the police a verification of his residence and that he was not involved in any criminal activity. Although he said the police had harassed him on the streets because he was Russian, he obtained the necessary verification without incident, and the international passport was issued in the normal course of business. He came to the United States on April 3, 1999.

3

Krasnopivtsev's sister Vera has been granted refugee status and now lives in Minnesota. She testified that she is a Baptist who was baptized in 1980 in Tbilisi, Georgia, and she is an ethnic Russian. She said that Russians are threatened in Georgia on the basis of nationalism and that Krasnopivtsev would be harmed if he went back due to nationalism, being a Baptist, and because he had been in the United States. She testified that their sister Lydmila has been unable to have social gatherings or birthday parties due to her religion. Vera corroborated the 1995 police shooting incident and that Krasnopivtsev did skilled work for the police without pay.

The IJ refused to consider a copy of Krasnopivtsev's internal passport but considered exhibits consisting of INS forms and attachments, including an asylum officer's "assessment to refer" and the Department of State Country Reports from Georgia for 1999 and 2000. The IJ outlined portions of the Country Report on Human Rights Practices for Georgia, which stated, among other things, that torture was used on some criminals and detainees and that "members of the security forces beat members of religious minorities." (R. at 65-66.) Also, although the constitution provides for freedom of religion and the government generally respects this right, local police officers and security officials have been known to harass several nonorthodox religious groups, "particularly local and foreign missionaries, including Jehovah's Witnesses, Baptists and Hare Krishna." (R. at 66.) Krasnopivtsev had never been a Baptist missionary.

The IJ found that Krasnopivtsev's testimony was not credible. Even if credible, the IJ further found that Krasnopivtsev's testimony was meager, general, and not the type of specific or detailed evidence necessary to obtain asylum. The IJ gave weight to the fact that Krasnopivtsev still has family members who live in Georgia, and he knows of no harm that has come to them. The IJ found that Krasnopivtsev failed to satisfy his burden of demonstrating that he had been persecuted or had a well-founded fear of future persecution, and the IJ denied all relief.

The BIA affirmed the IJ's decision, specifically noting that its adoption or affirmance of an IJ's decision is a statement that the Board's conclusions coincide with those articulated by the IJ. The BIA then added some of its own reasons and rejected Krasnopivtsev's arguments of evidentiary error. Krasnopivtsev petitions this court for judicial review.

## II.

Because the BIA essentially adopted the IJ's opinion while adding some of its own reasoning, we review both decisions. See Siong v. INS, 376 F.3d 1030, 1036 (9th Cir. 2004); Chand v. INS, 222 F.3d 1066, 1072 n.7 (9th Cir. 2000). We review for substantial evidence the BIA's determination that an alien is not eligible for asylum or withholding of deportation, and we may not overturn the BIA's determination "unless the evidence was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." Perinpanathan v. INS, 310 F.3d 594, 597 (8th Cir. 2002) (internal quotation marks omitted).

## A.

Krasnopivtsev argues that the IJ erred and deprived him of due process by admitting into evidence the asylum officer's referral assessment containing references to his credibility and by not admitting a copy of his internal passport. We find no error. First, the referral assessment was properly admitted. "The traditional rules of evidence do not apply to immigration proceedings." Nyama v. Ashcroft, 357 F.3d 812, 816 (8th Cir. 2004). Instead, the sole test for admission of evidence is whether it is relevant and whether its admission is fundamentally fair. Id. Krasnopivtsev's statements to another INS officer were relevant. Federal regulations prescribing rules of procedure state that the IJ may receive into evidence any statement that is material and relevant to any issue, and that the IJ shall make a de novo determination as to whether the alien could establish eligibility for asylum or withholding, taking into account the credibility of statements made by the alien and other facts that are known.

5

8 C.F.R. §1003.42(c), (d); see Prokopenko v. Ashcroft, 372 F.3d 941, 944-45 (8th Cir. 2004).

Krasnopivtsev asserts that admission of the referral assessment was prohibited by an internal Operating Policies and Procedures Memorandum (OPPM), which states that a document containing reference to INS credibility findings should not be filed with the immigration court. OPPM No. 96-1 (superseded by OPPM 00-01, Aug. 4, 2000); see also Prokopenko, 372 F.3d at 944. As the BIA noted, there was no error because this OPPM permits the filing of the referral sheet and all supporting documents. OPPM 00-01, at 14. We have said that it is doubtful whether this type of internal agency memorandum could confer any substantive legal benefits to an alien or be binding on the INS. Prokopenko, 372 F.3d at 944. Regardless of the memorandum's legal effect, the IJ used the referral sheet only as a record of fact statements made by the alien in an interview and specifically disavowed reliance on any credibility findings that might be contained therein. (R. at 83.) The record indicates that the IJ made a de novo determination concerning Krasnopivtsev's eligibility for asylum after properly considering the credibility of all the statements he made and other known facts, as required by the regulation. Furthermore, even if it had been error to admit a referral sheet that contained a credibility finding, the only credibility determination in that report was a statement that Krasnopivtsev was credible. (R. at 377.) Therefore, the IJ's consideration of this report could not have resulted in prejudice to Krasnopivtsev. See Al Khouri v. Ashcroft, 362 F.3d 461, 466 (2004) (noting any alleged error claimed to result in a denial of due process must cause actual prejudice to the alien).

Second, Krasnopivtsev argues that the IJ erred by refusing to admit his passport although she admitted the passport of his nephew, Dimitri Prokopenko, in a companion case and under identical circumstances. The BIA affirmed the IJ's decision to exclude Krasnopivtsev's passport because it was not translated and was untimely. See 8 C.F.R. § 1003.33 (requiring a foreign language document to be

accompanied by an English language translation and a certification signed by the translator). We find no error. Contrary to the requirements of the regulation, Krasnopivtsev submitted only a copy of the document, with no English translation or certification. His claim of unfair treatment because Prokopenko's passport was admitted is also without merit. The IJ admitted Prokopenko's passport as an exhibit, but she expressly stated in her written decision that she gave it no weight because it was untimely, untranslated, and not an original document. (Petitioner's Add., Exhibit A at 14.) Prokopenko's claims for asylum and other relief were all denied. Prokopenko, 372 F.2d at 946. Krasnopivtsev cannot show that the outcome of his case would have been any different had the IJ admitted the copy of his internal passport. Due process is denied only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case, resulting in prejudice to the alien. See Al Khouri, 362 F.3d at 466. No such showing exists here.

B.

Krasnopivtsev asserts that the IJ erred in concluding that he was not credible. The BIA did not comment on the IJ's credibility finding, noting simply that it agreed with the IJ's assessment that Krasnopivtsev had failed to meet his burden to show that he was eligible for relief. We decline to address the credibility issue because even assuming that Krasnopivtsev was credible, substantial evidence supports the IJ's and BIA's conclusions that the events Krasnopivtsev described are not sufficient to demonstrate that he was persecuted or has a well-founded fear of persecution on account of his ethnicity or his religion.

The Attorney General may confer asylum upon a refugee. 8 U.S.C. § 1158(b) (2000). A refugee is an alien who is unwilling to return to his home country due to a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). "Persecution involves a threat to one's life or freedom" on account

of one of those five enumerated grounds. <u>Shoaira v. Ashcroft</u>, 377 F.3d 837, 844 (8th Cir. 2004). If past persecution is established, we presume a well-founded fear of future persecution unless the government shows by a preponderance of the evidence that conditions in the applicant's country have changed to such an extent that a fear of persecution is no longer reasonable. <u>Hasalla v. Ashcroft</u>, 367 F.3d 799, 803 (8th Cir. 2004); <u>see</u> 8 C.F.R. § 1208.13.

Krasnopivtsev claimed that he was persecuted on account of being Russian. His testimony indicated that he was harassed, both by private citizens and the police, but this harassment does not rise to the level of persecution. The 1995 shooting began with police harassment because Krasnopivtsev was Russian, but the actual shooting was the random act of a drunken officer. Other police immediately took him to the hospital for treatment. The cow-stealing accusation occurred in Russia, and he admits it is not relevant to support his claim of persecution in Georgia. The only other specific incidents of mistreatment Krasnopivtsev testified to suffering on account of his Russian ethnicity were that citizens would harass him on the street and hit him if he did not have cigarettes and that the police required him to perform unpaid work.

Harassment by private citizens does not rise to the level of persecution. <u>See</u> <u>Rife v. Ashcroft</u>, 374 F.3d 606, 612 (8th Cir. 2004). Being forced on occasion to work without pay for the police is troublesome, but we cannot conclude that this alone rises to the level of persecution. "[P]ersecution is an extreme concept" and low-level types of intimidation or harassment are not sufficiently severe. <u>Shoaira</u>, 377 F.3d at 844 (internal marks omitted). We have stated that brief periods of detention, ethnic conflict, or isolated violence do not necessarily constitute persecution. <u>See</u> <u>Ngure v. Ashcroft</u>, 367 F.3d 975, 990 (8th Cir. 2004) (noting isolated violence does not compel a finding of persecution); <u>Al Tawm v. Ashcroft</u>, 363 F.3d 740, 743 (8th Cir. 2004) (noting brief detention not necessarily persecution); <u>Feleke v. INS</u>, 118 F.3d 594, 598 (8th Cir. 1997) (holding political

8

unrest and ethnic conflict do not compel a finding of persecution). We conclude that substantial evidence supports the BIA's and the IJ's determination that Krasnopivtsev has not demonstrated that he suffered past persecution or has a well-founded fear of persecution on account of being Russian.

As to his claim of religious persecution, Krasnopivtsev argues that the mistreatment of his family members who were granted refugee status in the United States in the 1990s on the basis of religious persecution is a valid basis for a well-founded fear of persecution. While he asserts that his family obtained refugee status in the 1990s because they were persecuted for their religion in Georgia, Krasnopivtsev has provided no details concerning their persecution, and he has not related how it affected him. He offers only the much outdated 1929 execution of his father's uncle as evidence of violence against family members. He indicated that since the 1970s, Baptists in Georgia have been prohibited from baptizing people in a local river, but they continued to baptize in a pool in church. Later, he testified that they now meet in private homes. He testified that he was never baptized and that he attended services infrequently in Georgia. Aside from vague allegations that as a child during the communist regime he was treated poorly on account of his family's beliefs, Krasnopivtsev has not introduced any evidence that he suffered any specific harm on account of his religious beliefs since 1991 or that there exists a pattern of family persecution that is linked to him. See Nyonzele v. INS, 83 F.3d 975, 983 (8th Cir. 1996) (holding that absent a pattern of persecution linked to the applicant, persecution of family members is insufficient to demonstrate a well-founded fear of persecution).

Additionally, there is no evidence that any harm has come to his remaining family members in Georgia. The reasonableness of a fear of persecution is diminished when family members remain in the native country unharmed, and the applicant himself had not been singled out for abuse. See Wondmneh v. Ashcroft, 361 F.3d 1096, 1098 (8th Cir. 2004). As the applicant, Krasnopivtsev must

demonstrate a particularized fear of persecution directed at him, not a fear of general violence. See Lopez-Zeron v. U.S. Dep't of Justice, INS, 8 F.3d 636, 638 (8th Cir. 1993). The record presents no objective evidence to indicate that he would become a target of persecution based upon his family's religious beliefs if he returned. Substantial evidence on the record supports the BIA's and the IJ's determination that Krasnopivtsev does not demonstrate either past persecution or a well-founded fear of persecution on the basis of his religious beliefs.

To be eligible for withholding of removal, 8 U.S.C. § 1231(b)(3), the standard is more demanding. "The alien must show a 'clear probability' that he or she will face persecution in the country to which he or she will be deported." Hasalla, 367 F.3d at 803. Because Krasnopivtsev failed to demonstrate that he is eligible for asylum, he also fails under the higher burden of proof required for withholding of deportation. See id.

## C.

Krasnopivtsev claims he is entitled to relief under the Convention Against Torture. To qualify for relief under Article 3 of the Convention Against Torture, the applicant must prove that it is more likely than not that he would be tortured if returned to the proposed country of removal, considering the testimony of the applicant as to past torture, the possibility of relocation within the country, mass violations of human rights, or other relevant information regarding conditions within the country. 8 C.F.R. § 208.16(c). Torture is defined as an act by which severe pain or suffering, whether physical or mental, is intentionally inflicted, and it is an extreme form of cruel and inhuman treatment; it does not include lesser forms of cruel, inhuman, or degrading treatment. 8 C.F.R. § 208.18(a)(1),(2). Our review leads us to agree with the IJ and BIA that Krasnopivtsev has made no showing that he would more likely than not be subjected to torture if returned to Georgia.

## III.

Accordingly, we deny Krasnopivtsev's petition for judicial review.

_____