# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-1084

_____

| | | |
|---|---|---|
| Bouapha Phommasoukha, | * | |
| | * | |
| Petitioner, | * | Petition for Review of |
| | * | an Order of the United States |
| v. | * | Board of Immigration Appeals. |
| | * | |
| Alberto Gonzales, Attorney General | * | |
| of the United States,[1] | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: February 18, 2005
Filed: June 3, 2005

_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and GRUENDER, Circuit
Judges.

_____

GRUENDER, Circuit Judge.

_____

[1]Alberto Gonzales has been appointed to serve as Attorney General of the
United States and is substituted as respondent pursuant to Rule 43(c) of the Federal
Rules of Appellate Procedure.

Bouapha Phommasoukha, a 71-year-old native and citizen of the Lao People's Democratic Republic ("Laos"),[2] petitions for review of a final order of the Board of Immigration Appeals ("Board"). The Board affirmed without opinion the decision of the Immigration Judge ("IJ") denying Phommasoukha's applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture. We remand to the Board for a determination of whether conditions in Laos have sufficiently changed to overcome the presumption that Phommasoukha has a well-founded fear of future persecution.

## I.    BACKGROUND

Bouapha Phommasoukha, a native and citizen of Laos, entered the United States as a non-immigrant visitor on August 18, 1997, and remained beyond his authorized stay. On August 21, 1998, Phommasoukha filed an application for asylum with the Immigration and Naturalization Service ("INS") Asylum Office.[3] An asylum officer interviewed Phommasoukha and, after deciding that Phommasoukha did not qualify for a grant of asylum because of changed country conditions, referred the application to the immigration court. The INS then initiated removal proceedings

---

[2]Laos is a landlocked country in Southeast Asia between Vietnam and Thailand. It has a population of 5.2 million. In 1975, the Communist movement known as the Pathet Lao overthrew the U.S.-backed government, ending a six-century-old monarchy. According to the U.S. Department of State's Country Report on Human Rights Practices, Laos remains an authoritarian, Communist state under the control of a single political party, the Lao People's Revolutionary Party. Laos is gradually moving toward economic and political liberalization.

[3]In March 2003, the functions of the Immigration and Naturalization Service were transferred to the newly formed Department of Homeland Security ("DHS"). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

against Phommasoukha by issuing a Notice to Appear, which alleged that he was removable from the United States as an alien who remained in the United States longer than permitted.

In removal proceedings before the IJ on March 1, 2000, Phommasoukha admitted the charges in the Notice to Appear and conceded removability. The IJ designated Laos as the country of removal. Phommasoukha renewed his requests for asylum, withholding of removal, and protection pursuant to Article 3 of the United Nations Convention Against Torture, or, in the alternative, voluntary departure. Following an evidentiary hearing on May 1, 2002, the IJ concluded that Phommasoukha did not prove that his imprisonment in a concentration camp constituted persecution or that he had a well-founded fear of future persecution. Accordingly, the IJ denied relief but granted Phommasoukha voluntary departure. The Board affirmed the IJ's decision without opinion. Phommasoukha filed this timely petition for review.

Phommasoukha's request for asylum is based on allegations of past persecution and a well-founded fear of future persecution. Phommasoukha served in the Laotian Royal Armed Forces from 1960 until the overthrow of the U.S.-backed Laotian government by the Pathet Lao in 1975. During his service with the Royal Armed Forces, Phommasoukha apparently worked with the United States Central Intelligence Agency ("CIA") to locate and monitor the Vietnamese army. After the Pathet Lao assumed control of Laos, however, Phommasoukha was sent to a concentration camp for "reeducation." Phommasoukha testified at the evidentiary hearing that he was kept in an underground cell, subjected to political indoctrination, required to perform forced labor, and denied contact with family or other prisoners. This testimony was corroborated by Paul Chanthalongsy Dao Heuang, a fellow inmate at the concentration camp.

Phommasoukha was released from the concentration camp in 1980 or 1981 and was allowed to return to his family in the village of Savannakhet. Though the Pathet Lao government apparently continued to monitor his activities, Phommasoukha was allowed to work on the rice farm owned by his family. Phommasoukha testified that he was, however, forced to serve as the local tax collector for the Laotian government.

In 1996, Phommasoukha apparently used 20,000 Kips[4] of tax revenue to buy medicine for those who had assisted the CIA. When the Laotian government discovered the misappropriation of money, it apparently brought corruption charges against Phommasoukha. Though the administrative record does not contain corroborating or other independent evidence of a conviction, Phommasoukha testified that he was jailed for two days. Sometime later, he left Laos, allegedly fearing further persecution arising out of his military service, his assistance to the CIA, and the corruption charge. Phommasoukha left behind a wife and several children.

Phommasoukha seeks review of the Board's decision to uphold the IJ's denials of his requests for asylum, withholding of removal, and protection under the United Nations Convention Against Torture.

## II.    DISCUSSION

An alien is eligible for asylum as a refugee if he is unable or unwilling to return to his home country because of persecution or a well-founded fear of persecution based on one of the five statutorily protected grounds. *See* 8 U.S.C. §

---

[4]At present currency-exchange rates, 20,000 Kips is worth approximately $1.97.

1101(a)(42)(A).[5] The burden of proving past persecution or a well-founded fear of future persecution rests with the alien applying for asylum. 8 C.F.R. § 208.13(a) (2005). If the alien establishes that he suffered past persecution, then he is entitled to a rebuttable presumption that he has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The burden then shifts to the DHS to show by a preponderance of the evidence that there has been a fundamental change in circumstances in the alien's home country such that the alien no longer has a well-founded fear of persecution. *Id.* "If the DHS does not satisfy this burden of rebuttal, the applicant is eligible for asylum." *De Brenner v. Ashcroft*, 388 F.3d 629, 636 (8th Cir. 2004).

In his petition for review, Phommasoukha argues that the Board erred when it found that his imprisonment in a concentration camp failed to rise to the level of persecution. As a result of this error, Phommasoukha argues, the Board also erred when it misallocated to him the burden of proving a well-founded fear of future persecution. When the Board affirms an IJ's decision without an opinion, we will treat the IJ's decision as a final agency action. *Al Tawm v. Ashcroft*, 363 F.3d 740, 743 (8th Cir. 2004). Therefore, "[w]e apply substantial evidence review to the [agency's] factual findings and de novo review to its legal determinations." *Amador-Palomares v. Ashcroft*, 382 F.3d 864, 866 (8th Cir. 2004).

---

[5]Section 1101(a)(42)(A) defines a refugee as:

[A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]

Phommasoukha provided credible evidence that he served in the Royal Armed Forces during the Laotian civil war and that he was imprisoned in a Pathet Lao concentration camp after his military service. The IJ, however, found that Phommasoukha's imprisonment in a concentration camp does not constitute past persecution. The IJ also found that Phommasoukha failed to carry his burden of proving that he had a well-founded fear of future persecution. Consequently, the IJ denied Phommasoukha's application for asylum under 8 U.S.C. § 1158.

We believe the IJ's conclusion that Phommasoukha's imprisonment in a Pathet Lao concentration camp does not constitute past persecution is not supported by substantial evidence. *See Lau May Sui v. Ashcroft*, 395 F.3d 863, 869 (8th Cir. 2005) (reviewing the Board's factual finding of no past persecution under the substantial-evidence standard). The purpose of Phommasoukha's imprisonment was to make him more compliant to the political dogma of the authoritarian government. As part of the Communist reeducation regimen, Phommasoukha was subjected to "indoctrination meetings," denied contact with his family, and required to perform forced labor. His imprisonment by the Pathet Lao regime continued for approximately four to six years with little change in treatment or conditions. *See Manivong v. INS*, 164 F.3d 432, 433 (8th Cir. 1999) (concluding that the petitioner, a citizen of Laos who spent almost one year in a labor camp because of his anti-Communist opinions, "was at one time the victim of persecution"). The IJ, however, erroneously focused solely on the apparent lack of physical harm to Phommasoukha at the concentration camp. Based on his lengthy imprisonment in a concentration camp operated by a brutal authoritarian regime and the substantial deprivations he suffered during his internment, we simply cannot agree with the IJ's factual finding that Phommasoukha did not suffer past persecution due to his protected status of political dissident. *See Mikhael v. INS*, 115 F.3d 299, 303 n.2 (5th Cir. 1997) (noting that persecution is broader than merely physical harm).

As a result of this erroneous factual determination, the IJ improperly placed the burden of establishing a well-founded fear of future persecution on Phommasoukha. *De Brenner*, 388 F.3d at 638-39. Phommasoukha, an alien who suffered past persecution due to his political opinions, should have been entitled to a presumption of having a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1) ("An applicant who has been found to have established such past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim."). The burden then should have shifted to the DHS to prove by a preponderance of the evidence that conditions in Laos have undergone a fundamental change from the time of the persecution such that the basis for Phommasoukha's well-founded fear of future persecution has been eliminated. 8 C.F.R. §§ 208.13(b)(1) and 208.13(b)(1)(i)(A). From the IJ's order, however, we understand that the burden of proving a well-founded fear of future persecution improperly remained on Phommasoukha throughout the proceedings.

"When the BIA applies an incorrect legal standard, the proper remedy typically is to remand the case to the agency for further consideration in light of the correct standard." *De Brenner*, 388 F.3d at 639 (quoting *Corado v. Ashcroft*, 384 F.3d 945, 948 (8th Cir. 2004)) (internal quotation omitted). The IJ applied the incorrect legal standard based on the erroneous conclusion that Phommasoukha's confinement in a concentration camp does not rise to the level of past persecution. Therefore, in light of Phommasoukha's credible claim of past persecution, we remand this case for a determination of whether conditions in Laos are sufficiently changed to overcome the presumption that Phommasoukha has a well-founded fear of future persecution.

## III.   CONCLUSION

Bouapha Phommasoukha's imprisonment in a Communist-run concentration camp constitutes past persecution based on his political opinion. Accordingly, the burden of proving a fundamental change in the conditions of Laos such that

Phommasoukha does not have a well-founded fear of future persecution is on the DHS. We reverse and remand to the Board for further proceedings consistent with this opinion.

_____