# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 03-3207

_____

| | | |
|---|---|---|
| Mohammad Alyas, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| Alberto Gonzales, Attorney | * | |
| General of the United States,[1] | * | [PUBLISHED] |
| | * | |
| Respondent. | | |

_____

Submitted: January 12, 2005
Filed: August 19, 2005

_____

Before LOKEN, Chief Judge, HANSEN and MURPHY, Circuit Judges.

_____

HANSEN, Circuit Judge.

_____

[1]Alberto Gonzales has been appointed to serve as Attorney General of the United States and is substituted as the Respondent pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Mohammad Alyas, a native and citizen of Pakistan, petitions this court for review of an order entered by the Board of Immigration Appeals ("BIA") affirming the decision of an Immigration Judge ("IJ") to deny Alyas's applications for asylum, withholding of removal, and relief under the Convention Against Torture. After careful review, we deny Alyas's petition for review.

I.

In 1996, Alyas joined the Pakistan People's Party ("PPP"), one of two major political parties in Pakistan. The PPP's rival party is the Pakistan Muslim League ("PML"). Alyas's father, the owner of a dry goods store in the village of Thatha Faqirullah, had been a supporter of the PPP but had not been a card-carrying member. On March 28, 1996, Alyas was holding a PPP meeting at the dry goods store, which he operated for his father. He alleges that members of the local PML entered and disrupted the meeting, damaging fixtures and vandalizing the store. When Alyas attempted to report the incident to police, he was detained by the police for three days. He alleges that the police, who favored the PML, beat him and urged him to join the PML. Afterwards, local PML officials again contacted Alyas and threatened harm if he did not change his political affiliation. Alyas does not allege that the police beating resulted in any serious injuries. At the time of this incident, the PPP was the party in control of the national government.

In February 1997 the PML won in general elections and took control of Pakistan's government. PML members in Alyas's village compiled a list of PML opponents, and Alyas's name was on the list. On June 2, 1997, Alyas's dry goods store burned to the ground. When Alyas attempted to report the fire to the police, he was accused of burning the store himself in order to frame the PML. The police refused to take a report of the incident. On June 15, 1997, Alyas was on his way to the site of the store to continue his efforts to rebuild it when he was attacked and beaten by members of the PML. Alyas went to the police to report the attack, but the police again refused to take a report. Instead, Alyas was arrested and detained for

seven days, during which time he was threatened, beaten, and burned with cigarettes. He was released after his father paid a bribe of 15,000 rupees. Alyas never discovered the origin of the fire that burned down his store. Later in June 1997 Alyas alleges that he moved to Sialkot, Pakistan, in order to avoid problems with the PML. He lived in Sialkot for five months. After receiving threats from the PML in Sialkot as well, he moved to Lahore, where he lived for at least two years. His father then told him that the PML was still looking for him, and Alyas moved to Faisalabad, where he lived for three months.

In the meantime, in October 1999, a new government took over in Pakistan, and Alyas alleges that both PPP and PML members were arrested by the new regime. Alyas eventually decided to leave Pakistan. In July 2001 Alyas traveled to the United States using fraudulent identification and travel documents. At the Los Angeles International Airport, he was refused admission to the United States because of his invalid documents. Alyas thereafter sought asylum, withholding of removal, and relief under the Convention Against Torture. Alyas's parents and most of his brothers and sisters still live in Pakistan.

Alyas appeared at a hearing before an IJ in May 2002. Before the hearing, Alyas's counsel had requested an interpreter in the Urdu language. The record reflects that Alyas speaks Punjabi, Urdu, and some English. At the beginning of the hearing, when Alyas told the IJ that even though he spoke Urdu he might communicate better in Punjabi, the Judge informed Alyas that his lawyer had requested an Urdu interpreter. Alyas responded that an Urdu interpreter was fine. (Admin. R. at 92-93.) While Alyas indicated several times that he did not understand questions being asked of him, he nevertheless affirmed that he did speak Urdu. (Id. at 160.) Alyas testified that before he left Pakistan he had lived in that country for at least two years and eight months without being arrested or beaten. He also testified that neither his father nor other members of his family were ever harassed or arrested by government authorities or PML members. Alyas believes that he was targeted by

the PML and the police because he was such an active member of the PPP and had a lot of social contacts.

The government submitted into evidence a Profile of Asylum Claims and Country Conditions for Pakistan. The profile, prepared by the Department of State in 1997, states that because the PPP was in charge of the national government and headed coalition governments in the Punjab and Northwest Frontier provinces of Pakistan from 1993 to November 1996, it would be hard for an asylum applicant to show persecution on account of PPP membership during that period. (Id. at 264.) The profile also states that in 1997, after the PML won in general elections, there was little evidence of political reprisal of PPP members, and PPP members continued to participate in Pakistani politics and government. (Id.)

In his oral decision, the IJ noted that Alyas was unable to show that the current Pakistani government had targeted him in any specific way. The court found that Alyas had not met the burden of showing eligibility for asylum because he had not established past persecution or a well-founded fear of future persecution, noting that Alyas's claim of future persecution at the hands of the PML was diminished because the country was no longer run by the PML. The IJ also denied withholding of removal, 8 U.S.C. § 1231(b)(3) (2000), and relief under the Convention Against Torture, 8 C.F.R. § 1208.16(c) (2004). The BIA affirmed without opinion pursuant to 8 C.F.R. § 1003.1(e)(4) (2004). Where the BIA affirms without opinion, the decision of the IJ is the final agency determination for purposes of judicial review. See 8 C.F.R. § 1003.1(e)(4); Phommasoukha v. Gonzales, 408 F.3d 1011, 1014 (8th Cir. 2005).

In his petition for review, Alyas argues that the IJ erred in denying his application for asylum, that the IJ violated his due process rights by failing to provide a Punjabi translator and by conducting the immigration hearing in an egregious and biased manner, and that the BIA erred by affirming without opinion. Alyas does not

argue that the IJ or the BIA erred in denying relief under the Convention Against Torture, and only summarily mentions any request for a review of the decision to deny the withholding of removal. Alyas also failed to argue before the BIA that the IJ erred in denying the withholding of removal and relief under the Convention Against Torture. (Admin. R. at 28-34.) Because Alyas does not argue these issues in his brief, we do not consider them as part of the petition for review. See Falaja v. Gonzales, 406 F.3d 1076, 1085 (8th Cir. 2005) (holding that petitioner who did not argue on appeal that IJ erred by denying relief under the Convention Against Torture waived that argument); Gebremaria v. Ashcroft, 378 F.3d 734, 736 n.4 (8th Cir. 2004) (holding that court of appeals lacks jurisdiction to decide an issue not first presented to the BIA).

## II.

We review the IJ's determination that Alyas is not eligible for asylum for substantial evidence on the record as a whole. Krasnopivtsev v. Ashcroft, 382 F.3d 832, 837 (8th Cir. 2004). We will not reverse the IJ's decision unless the evidence is so compelling that no reasonable fact finder could fail to find eligibility for asylum. Id.

At the Attorney General's discretion, asylum may be granted to an alien who meets the statutory definition of a refugee. See 8 U.S.C. §§ 1158(b) and 1101(a)(42)(A) (2000). In order to be statutorily eligible, Alyas is required to demonstrate past persecution or a well-founded fear of future persecution on account of one of five enumerated grounds – in Alyas's case, his political opinion. A well-founded fear is one that is both "subjectively genuine and objectively reasonable." Ismail v. Ashcroft, 396 F.3d 970, 973 (8th Cir. 2005). Where an alien has established past persecution, we presume that the alien also has a well-founded fear of future persecution unless the government shows by a preponderance of the evidence that any fear of future persecution is no longer reasonable. Krasnopivtsev, 382 F.3d at 838; Phommasoukha, 408 F.3d at 1014; see also 8 C.F.R. § 1208.13(b)(1).

We conclude that substantial evidence supports the IJ's determination that Alyas has not demonstrated past persecution on account of his membership in the PPP. Although Alyas argues that he was harassed and attacked by members of the PML, Alyas has not established that the PML members who vandalized his store in March 1996 or who beat him in July 1997 represented the Pakistani national government or that the government was unwilling or unable to protect Alyas from the PML. See Valioukevitch v. I.N.S., 251 F.3d 747, 749 (8th Cir. 2001). In fact, Alyas cannot argue that the March 1996 incident constituted harassment by his government because the Pakistani government in 1996 was dominated by the PPP – the party to which Alyas belongs. We have recognized that harassment by private citizens does not rise to the level of persecution required for asylum eligibility. Krasnopivtsev, 382 F.3d at 839; Rife v. Ashcroft, 374 F.3d 606, 612 (8th Cir. 2004). Alyas also alleges that he was detained and beaten by local police on two occasions. While any instance of unjustified detention and physical abuse is regrettable, two isolated occurrences of detention and abuse do not establish that Alyas is eligible for asylum because we have also recognized that "brief periods of detention . . . or isolated violence do not necessarily constitute persecution." Krasnopivtsev, 382 F.3d at 839; Ngure v. Ashcroft, 367 F.3d 975, 990 (8th Cir. 2004) (noting that isolated violence does not compel a finding of persecution); Tawm v. Ashcroft, 363 F.3d 740, 743 (8th Cir. 2004) (noting that brief detention is not necessarily persecution). Under the Immigration and Nationality Act, "persecution is an extreme concept," Krasnopivtsev, 382 F.3d at 839 (citation and internal marks omitted), and Alyas's injuries do not demonstrate "the atrocity of . . . past persecution [that] an applicant must show in order to obtain this type of asylum, including permanent physical and emotional scarring, or a combination of detention, involuntary military service, sleep deprivation, beatings, electric shock, and routine physical torture and psychological abuse," Francois v. I.N.S., 283 F.3d 926, 932 (8th Cir. 2002).

Alyas also fails to establish a well-founded fear of future persecution on account of his political activities. The current Pakistani government has been in

power since 1999, and Alyas does not allege that he experienced any harassment or abuse while he lived in Pakistan from July 1997 until July 2001.[2] Alyas also testified that his family members continue to reside unharmed in Pakistan. In such a situation, we have recognized that an alien's fear of future persecution is diminished. See Krasnopivtsev, 382 F.3d at 839 ("The reasonableness of a fear of persecution is diminished when family members remain in the native country unharmed, and the applicant himself had not been singled out for abuse.").

Alyas also argues that the Immigration Court violated his due process rights by failing to provide a translator in the Punjabi language and by conducting the proceeding in a biased and unacceptable manner. We conclude that Alyas did not present this argument to the BIA. While Alyas did argue to the BIA that he was not allowed an adequate opportunity to present his case and that the interpreter was not adequate, he made no argument that his due process rights had been violated. (Admin. R. at 33-34.) Because Alyas failed to present this argument to the BIA in the first instance, we lack jurisdiction to decide the claim. See 8 U.S.C. 1252(d)(1)(2000); Etchu-Njang v. Gonzales, 403 F.3d 577, 581-82 (8th Cir. 2005); Zara v. Ashcroft, 383 F.3d 927, 930 (9th Cir. 2004).

---

[2]We note that this interval of time – from July 1997 when Alyas allegedly left his village of Thatha Faqirullah until July 2001 when he arrived in the United States – is more than two years and eight months, as Alyas's hearing testimony suggests. He testified that he lived first in Sialkot for five months – ostensibly from June 1997 until November 1997. He then lived in Lahore for two years, which puts him in Lahore from November 1997 through around November 1999. From Lahore, Alyas testified that he moved to Faisalabad, where he lived for three months – until around February 2000. However, it is undisputed that Alyas did not come to the United States until July 2001. His testimony leaves the remaining one year and five months unaccounted for. Nevertheless, it appears that Alyas lived in Pakistan for over four years without any additional problems with any political faction of the Pakistani government.

Finally, we do not review the BIA's use of the summary affirmance procedures contained in 8 C.F.R. § 1003.1(e)(4).  <u>See</u> <u>Rife</u>, 374 F.3d at 610.

Accordingly, for the reasons stated, we deny Alyas's petition for judicial review.

_____