

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-15-2007

# Jin Hua Yang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1477

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Jin Hua Yang v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1467.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1467

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1477

JIN HUA YANG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of an Order of
The Board of Immigration Appeals
Immigration Judge: Honorable Annie S. Garcy
(No. A97-949-277)

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2007

Before: SLOVITER and AMBRO, Circuit Judges
POLLAK,* District Judge

(Filed: March 15, 2007)

OPINION

AMBRO, Circuit Judge

_____

*Honorable Louis H. Pollak, Senior United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

Jin Hua Yang, a Chinese citizen, seeks review of the final order of removal by the Board of Immigration Appeals denying him asylum, withholding of removal, and protection under the Convention Against Torture.[1]  In our Court, Yang presses only arguments relating to asylum and withholding of removal.[2]  Because we conclude that a reasonable factfinder would not be compelled to conclude that Yang has a well-founded fear of persecution upon return to China, we deny his petition for review.

I.

Yang's claims for asylum and withholding of removal are based on events that took place between June and October of 2003.[3]  In March of that year, Yang's older sister had become pregnant with her third child, in violation of China's family planning policy. On June 17, government officials went to her house after she had missed a scheduled "IUD checkup."  Yang's sister, however, was in hiding at her parents' home and Yang's brother-in-law told the officials that she was working in another province.  On September 20, Yang's brother-in-law was arrested by two government officials after Yang's sister had failed to show up for two more IUD checkups.

One week later, on September 27, two government agents went to Yang's parents'

---

[1]We have jurisdiction to review final orders of the BIA under 8 U.S.C. § 1252(a)(1).

[2]Any argument based on the Convention Against Torture is therefore waived.  *See Lie v. Ashcroft*, 396 F.3d 530, 532 (3d Cir. 2005) (citing *Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993)).

[3]Though the Immigration Judge expressed skepticism about the truthfulness of much of Yang's testimony, she assumed for the sake of her analysis that it was true.  We do the same.

house (at which Yang also lived) to look for his sister. She was inside, but Yang's parents answered the door. The officials indicated that they believed Yang's sister to be there and threatened his parents with arrest if they did not turn her in or allow the officials to search the house. His parents did not do either. Yang, monitoring the situation from upstairs with his sister, then went down to help his parents deal with the officials. A ten-minute, heated discussion among the five ensued, during which Yang physically pushed the officials. Neither fell to the ground or was harmed, and the officials eventually left the Yang home.

Fearing reprisal, Yang went into hiding at a friend's house. Government officials came looking for Yang at his parents' home the next day. Two days after that, Yang's sister submitted to an abortion and her husband was released from jail. Yang, however, left China on October 12 with the assistance of smugglers and made his way into the United States on January 14, 2004. Though Chinese officials occasionally went to Yang's parents' house in search of Yang for several months after the September 2003 altercation, they have not done so since February 2004. Yang's sister and brother-in-law were not fined, remain employed, and continue to live in China without incident (as do Yang's parents).

II.

A.

The Attorney General has the discretion to grant asylum to an alien who qualifies as a "refugee." 8 U.S.C. § 1158(b). The term "refugee" includes those who are unable or unwilling to return to their home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). Moreover, individuals persecuted "for resistance to a coercive population control program . . . shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be . . . subject to persecution for such . . . resistance shall be deemed to have a well founded fear of persecution on account of political opinion." *Id.* § 1101(a)(42).

The immigration laws also provide that the Attorney General *must* withhold deportation of an individual to a particular country if his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). Under this provision, the immigrant must show that "it is more likely than not that he will face persecution if he is deported." *Chang v. INS*, 119 F.3d 1055, 1066 (3d Cir. 1997) (internal quotation marks omitted) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987)). The test for asylum, therefore, "is less exacting" than that for withholding of removal. *Id.* It does not require that persecution be more likely than not, as "[f]ear can be

4

well-founded 'even when there is a less than 50% chance of the occurrence taking place.'" *Id.* (quoting *Cardoza-Fonseca*, 480 U.S. at 431). Therefore, if an immigrant does not make the requisite showing for asylum, he does not qualify for withholding of removal *a fortiori*. *See Guo v. Ashcroft*, 386 F.3d 556, 561 n.4 (3d Cir. 2004); *Mulanga v. Ashcroft*, 349 F.3d 123, 132 (3d Cir. 2003).

Persecution is "extreme conduct" that is so severe as to constitute a "threat[] to life, confinement, torture, [or] economic restrictions so severe that they constitute a real threat to life or freedom." *Chang*, 119 F.3d at 1066; *see also Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). "[P]ersecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional," *Fatin*, 12 F.3d at 1240, though considering the nature of a petitioner's potential prosecution and punishment on return is appropriate, *see Chang*, 119 F.3d at 1059–62. In addition, a petitioner's fear of persecution must also be "well-founded," a concept both subjective and objective. *See Lin v. INS*, 238 F.3d 239 (3d Cir. 2001). "An applicant can demonstrate that [he] has a well-founded fear of future persecution by showing that [he] has a genuine fear, and that a reasonable person in [his] circumstances would fear persecution if returned to [his] native country." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

"We must uphold the BIA's factual findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Lie*, 396 F.3d at 534 n.3 (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 480 (1992)). Substantial evidence is lacking in the context of a case such as ours only where "a reasonable

5

factfinder would have to conclude that the requisite fear of persecution existed." *Dia v. Ashcroft*, 353 F.3d 228, 248 (3d Cir. 2003) (*en banc*). "We will reverse only if the evidence not only supports a contrary conclusion, but compels it." *Guo*, 386 F.3d at 561.

B.

We will assume for purposes of this case that Yang's actions constituted "resistance" to China's family planning laws and thereby could qualify him as a "refugee" under § 1101(a)(42). *See generally Cao v. Att'y Gen.*, 407 F.3d 146 (3d Cir. 2005). Nevertheless, we cannot conclude that the record evidence compels the conclusion that Yang has a well-founded fear of persecution if he were removed to China.[4]

Quite simply, nothing in the record indicates what, if anything, would happen to him once there. Indeed, Yang's own testimony about his family's experience since 2003 itself constitutes substantial evidence that he would not be subject to persecution in China. His brother-in-law was released from jail when his sister submitted to an abortion, and neither was fined for his or her initial resistance to China's family planning policy. Both remain employed. Moreover, Yang's parents have suffered no reprisal for their role in concealing Yang's sister, despite the fact that they were involved in the same altercation with the authorities as was Yang. "[W]hen family members remain in [the] petitioner's native country without meeting harm, and there is no individualized showing

---

[4]Yang does not argue that he has suffered from past persecution.

6

that [the] petitioner would be singled out for persecution, the reasonableness of [the] petitioner's well-founded fear of future persecution is diminished." *Lie*, 396 F.3d at 537; *see also Krasnopivtsev v. Ashcroft*, 382 F.3d 832, 839 (8th Cir. 2004). Finally, the record indicates that though government officials periodically inquired as to Yang's whereabouts for some time after the relevant events, no official has done so since early 2004. In short, a reasonable person would not be compelled to conclude that Yang should fear persecution upon his return to China.

* * * * *

For the foregoing reasons, the decision of the BIA is supported by substantial evidence, and we thus deny Yang's petition for review.