**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3110
_____

EDWIN ALVARENGA,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A087-944-055)
Immigration Judge: Mirlande Tadal
_____

Argued July 13, 2022

Before: GREENAWAY, JR., MATEY, and RENDELL, *Circuit Judges.*

(Filed: September 19, 2022)

Jordan Weiner **[ARGUED]**
American Friends Service Committee
Immigrant Rights Program
570 Broad Street
Suite 1001
Newark, NJ 07102
        *Counsel for Petitioner*

Merrick B. Garland
Brian M. Boynton
Kiley Kane

Andrea N. Gevas **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
     *Counsel for Respondent*

————————

OPINION[*]

————————

**MATEY**, *Circuit Judge*.

Petitioner Edwin Alvarenga is subject to removal but claims Convention Against Torture ("CAT") protection citing the threat of gang violence in El Salvador. But the Board of Immigration Appeals ("BIA") denied his claim based on substantial evidence, and so we must deny his petition.

**I.**

Alvarenga illegally entered the United States from El Salvador in 1995 and settled in New Jersey. There, he met a Salvadoran drug dealer and MS-13 gang member named Inmar Mendoza.[1] Alvarenga began working for Inmar delivering narcotics and was arrested. He cooperated with police and later testified against Inmar, leading to convictions against Inmar and two of his associates. While imprisoned for his own role in the scheme, Alvarenga was visited by Inmar's brother who blamed Alvarenga for Inmar's arrest and

————————

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

[1] Inmar Mendoza is referred to interchangeably throughout the administrative record as "Pirate" and "Inmar."

warned him to "be careful." A.R. 203. Shortly afterward, the Department of Homeland Security ("DHS") removed Alvarenga to El Salvador.

A week after Alvarenga arrived in El Salvador, armed MS-13 members came to his home and threatened punishment for cooperating against Inmar. Alvarenga soon fled, reentering the United States and returning to a town near his old neighborhood in New Jersey. There, Inmar cornered Alvarenga as he got out of his car and threatened him at knifepoint. Nothing came of these threats, but Alvarenga soon faced a new criminal investigation. Once more, Alvarenga offered cooperation. This time, he helped catch "El Doctor," a drug dealer he met through Inmar. Facing removal for a second time, Alvarenga sought protection fearing that, if he is deported to El Salvador, MS-13 members will finally make good on their threats.

An Immigration Judge ("IJ") denied Alvarenga's application, finding insufficient evidence of likely torture. On appeal, the BIA upheld the IJ's decision. Finding no errors within our limited scope of review, we will deny this petition.[2]

## II.

To qualify for relief under CAT, Alvarenga bears the burden of proving that "it is more likely than not that he . . . would be tortured" in El Salvador. 8 C.F.R. § 1208.16(c)(2).

---

[2] The BIA had jurisdiction under 8 C.F.R. § 1208.31(g)(2)(ii) and we have jurisdiction under 8 U.S.C. § 1252(a). Because the BIA "invoke[d] specific aspects" of the IJ's "factfinding in support of [its] conclusions," we review both decisions. *Uddin v. Att'y Gen.*, 870 F.3d 282, 289 (3d Cir. 2017), *as amended* (Sept. 25, 2017). Factual findings are reviewed under the substantial evidence standard and "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Sandie v. Att'y Gen.*, 562 F.3d 246, 251 (3d Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(B)).

A standard that assesses what would likely happen to the applicant, whether this constitutes torture, how public officials would respond, and whether such a response would constitute acquiescence. *Myrie v. Att'y Gen.*, 855 F.3d 509, 515–16 (3d Cir. 2017). Applying that test, we conclude the BIA did not err in finding Alvarenga's evidence too thin to win the day.[3]

## A.    Alvarenga Has Not Shown a Likelihood of Torture

Alvarenga first argues that the IJ ignored evidence of MS-13's operations in El Salvador, and the particular threat of gang violence toward witnesses. He notes the IJ, whose reasoning was adopted by the BIA, inferred from the lack of harm Alvarenga suffered despite the two threats, that the danger has passed. That, he says, ignored the evidence of conditions in El Salvador and the broader problems of gang violence. But it does not follow that Alvarenga made the required showing. The single interaction with gang members in El Salvador, more than ten years ago, did not result in any harm, let alone torture. Likewise Alvarenga's one-time run-in with Inmar in New Jersey.[4] Alvarenga responds that this lack of past harm does not mean he does not qualify. But it does show a lack of harm despite ample opportunity.

Similarly, the IJ relied on Alvarenga's expert evidence that gangs usually target family members of witnesses to contrast the long absence of harm to Alvarenga's relatives.

---

[3] Though we remind the agency that, while they are "not required to write an exegesis on every contention," they still must "show that [they have] reviewed the record and grasped the movant's claims." *Sevoian v. Ashcroft*, 290 F.3d 166, 178 (3d Cir. 2002) (quoting *Mansour v. I.N.S.*, 230 F.3d 902, 908 (7th Cir. 2000)).

[4] Alvarenga objects to the Board's discussion of his return to the same area he fled. But as the IJ stated, "[t]he mere fact that [Alvarenga] decided to return to New Jersey, where he lived with and interacted with [Inmar], demonstrates that he does not fear [Inmar] or his associates." A.R. 54.

4

*See generally Krasnopivtsev v. Ashcroft*, 382 F.3d 832, 839 (8th Cir. 2004) (citation omitted) ("The reasonableness of a fear of persecution is diminished when family members remain in the native country unharmed, and the applicant himself had not been singled out for abuse."). In the face of the gang's failure to inflict harm when given repeated chances, we cannot say that the evidence compels the conclusion Alvarenga faces torture if returned. *See Sandie*, 562 F.3d at 251.

**B.      Alvarenga Has Not Shown a Likelihood of Government Acquiescence**

Even if we disagreed with the BIA's conclusion that Alvarenga failed to show likely torture, we see no basis to disturb the finding that the Salvadoran government would not partake, acquiesce, or turn a blind eye. "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). Under the "highly deferential" substantial evidence standard of review applied here, *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020), the BIA's finding that public officials would likely respond by deterring gang violence, is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks and citations omitted).

Here, the BIA discerned no clear error in the IJ's determinations, based on country conditions evidence in the record, that Salvadoran government and law enforcement officials investigate and prosecute, with some success, gang-related violence and corruption. The IJ also referenced Alvarenga's expert's report on the country conditions in

5

El Salvador, pointing to recent successful gang prosecutions. And Alvarenga admitted that he never reported the threats.

Alvarenga points to statistics about the scale of gang activity in El Salvador. But we are "not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (citation omitted). And "[w]hile every predictive judgment is subject to second-guessing, especially when it involves the behavior of foreign governmental actors, the BIA's conclusion is not one that a reasonable adjudicator would be compelled to reject." *Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 93 (3d Cir. 2021).

Nor does Alvarenga's evidence establish willful blindness by the Salvadoran government. *See Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 70 (3d Cir. 2007). Alvarenga claims that "the agency misapplied the willful blindness standard by failing to undertake an individualized analysis of the effectiveness of the government's efforts to combat gang violence." Opening Br. 33. *See Quinteros v. Att'y Gen.*, 945 F.3d 772, 788 (3d Cir. 2019). But while some of the country conditions evidence shows general gang violence, that same evidence also suggests successful attempts at combatting the problem. *See Galeas Figueroa*, 998 F.3d at 93. It is not enough for Alvarenga to argue that the record supports his arguments; he must establish that the record compels the conclusion that he will be tortured and that the government will turn a blind eye. *See Sandie*, 562 F.3d at 251. Because Alvarenga did not show that it was more likely than not he would be tortured in El Salvador by or with the acquiescence of a public official, the decision denying CAT protection was supported by substantial evidence.

## III.

For these reasons, we will deny the petition for review of the BIA's decision.

*Edwin Alvarenga v. Attorney General of the United States*

*No. 21-3110*

---

**RENDELL**, <u>Circuit Judge</u>, <u>dissenting</u>:

I respectfully dissent from the majority's opinion, as I would reverse and remand because the Immigration Judge failed to adequately discuss the expert opinion offered on behalf of the petitioner in this case.

Dr. Thomas J. Boerman is a recognized expert on gangs in El Salvador and has provided expert testimony in over 500 matters in U.S. and Canadian courts involving petitioners from Central America, including from El Salvador, fearing gang violence. <u>See</u> A.R. 74.[1] He opined that, in his "professional opinion […] Mr. Alvarenga would be at high risk of egregious physical harm and death if returned to El Salvador." A.R. 76. Indeed, Dr. Boerman described this as "the only defensible conclusion." <u>Id.</u> His opinion consists of one hundred and twenty detailed paragraphs over twenty-seven single-spaced

---

[1] Dr. Boerman attested that he has declined to give testimony in another approximately 125 cases, typically when there are questions about the petitioner's veracity, his own lack of expertise, or his belief that the petitioner does not face an unusually high risk as compared to the general population. A.R. 74. He only involves himself in cases in which he believes that "1) there is a high and predictable risk of egregious physical harm and possibly death, 2) those risks exist for reasons that are particular to the individual versus arising from the risk of generalized violence, 3) internal relocation cannot be viewed as a viable option for safe repatriation, and 4) it is unrealistic to conclude that the Salvadoran government would be able or willing to protect the individual if returned." <u>Id.</u>

pages. The Immigration Judge cites to the opinion only four times, and mischaracterizes, or takes out of context, Boerman's statements in each instance.[2]

When reviewing questions of law and applications of law to undisputed facts, "our review is plenary," and our precedent requires that the Immigration Judge and the Board take into account "all evidence relevant to the possibility of future torture, including past torture and the possibility of relocating to avoid future harm." Ghanem v. Att'y Gen., 14 F.4th 237, 248 (3d Cir. 2021) (citation omitted); see also Guzman Orellana v. Att'y Gen., 956 F.3d 171, 177 (3d Cir. 2020). Neither the Immigration Judge nor the Board need "write an exegesis on every contention" in the record. Ghanem, 14 F.4th at 250 n.8 (quoting Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002)). But, they must explain their decision if they disregard evidence favorable to the applicant or in tension with their findings. Quinteros v. Att'y Gen., 945 F.3d 772, 786 (3d Cir. 2019) ("Even if not specifically addressed in the decision below, the agency may not ignore evidence favorable to the alien. And if evidence is to be disregarded, we need to know why") (cleaned up).

_____

[2] For example, the Immigration Judge notes that petitioner's family members were not harmed, citing the expert report as if it concluded that this fact was controlling. But Dr. Boerman merely notes that this can occur, A.R. 90, and harm to family is merely one of the methods of recrimination employed by MS-13. Id. The Immigration Judge also concluded that the government would protect petitioner because Dr. Boerman notes that the "government has prosecuted and convicted 373 members of MS-13." A.R. 84. But the next sentence of his opinion states that this is counterproductive, as incarcerating gang members actually strengthens gangs, and historically, prosecution "has never translated to a diminishing of gang control over communities or enhanced security for individuals at risk from them. Id.

Here, for instance, the Immigration Judge has not explained why she did not consider, or disregarded, evidence in the record that suggested MS-13 gang members were likely to harm Alvarenga if he returned to El Salvador. Dr Boerman's opinion is replete with statements which are favorable to petitioner, none of which are cited by the Immigration Judge. Indeed, most are totally ignored.

The Immigration Judge also relied on the fact that MS-13 had not threatened Alvarenga in years to support her finding that Alvarenga did not face a likelihood of harm should he return to El Salvador. See A.R. 54. Dr. Boerman, however, counsels quite the opposite conclusion: "Once targeted, the gravity of the threat toward an individual does not diminish across time, even over the course of years." A.R. 92. MS-13 gang members have "institutional memory." A.R. 93. The Immigration Judge did not discuss why she discounted the expert's testimony in this area.

The Immigration Judge also ignores Dr. Boerman's opinion, while purporting to credit it, concluding that the Salvadoran government would not turn a blind eye to Alvarenga's persecution. She cites to the report when she concludes, "based on the evidence submitted, it appears as though the police would act if Respondent submitted a complaint." A.R. 55. But, when read in context, and in full, the report suggests the opposite conclusion. See, e.g., A.R. 77-82, ¶¶ 20-43 (section titled "Governmental Responses to Gangs and Inability to Control Them"). Dr. Boerman states, "For reasons described in various sections of this declaration, it is wholly unreasonable to conclude that the Salvadoran government would be able or willing to offer Mr. Alvarenga any protection whatsoever. Not only do police and other agents of government not involve

3

themselves in what they perceive as intra and inter-gang violence, but the social constructs, resources, experiences and institutional structures necessary to protect him in the short, medium or long-term <u>simply do not exist.</u>" A.R. 76 (emphasis added).

The Immigration Judge's failure to mention, let alone discuss, the conclusions in Dr. Boerman's expert report which are favorable to the petitioner, was error. Indeed, we are left wondering why, or whether, she discredits the opinion. As we noted in <u>Quinteros</u>, in light of the Immigration Judge's disregard of this evidence, we need to know why. We have no choice but to vacate and remand for her to consider the expert's opinion in toto.

For these reasons, I respectfully dissent.