# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4151

_____

| | | |
|---|---|---|
| Nataliya Vladimironva Kondakova; | * | |
| Yuriy Leonidovich Kondakov; | * | |
| Olga Yrievna Kondakova, | * | |
| | * | |
| Petitioners, | * | Petition for Review |
| | * | of an Order of the |
| v. | * | Board of Immigration Appeals |
| | * | |
| John Ashcroft, Attorney General | * | |
| of the United States of America, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: February 12, 2004
Filed: July 29, 2004

_____

Before MELLOY, McMILLIAN and COLLOTON, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Petitioners Nataliya Vladimironva Kondakova,[1] her husband, Yuriy Leonidovich Kondakov, and their daughter, Olga Yrievna Kondakova, who are citizens of the Ukraine, seek review of a final order entered by the Board of

_____

[1]Nataliya Vladimironva Kondakova is the principal applicant; her husband, Yuriy Leonidovich Kondakov, and their daughter, Olga Yrievna Kondakova, are derivative applicants. Because Nataliya Vladimironva Kondakova is the principal applicant, all references to "Kondakova" are to her.

Immigration Appeals (the Board) summarily denying their request for asylum and withholding of removal. In re Kondakova, No. A75 256 100 St. Paul (B.I.A. Nov. 27, 2002) (order). For reversal, petitioners argue that substantial evidence did not support the Board's decision that Kondakova's claims of past and future religious persecution were not credible. For the reasons discussed below, we deny the petition for review.

We have jurisdiction to review the order of the Board pursuant to 8 U.S.C. § 1252(a). See also id. § 1252(b)(1), (2) (venue proper in this circuit because proceedings were held in Minnesota).

In July 1996 petitioners entered the United States through Chicago IL as business visitors. They remained in the United States after the expiration of their visas. In December 1997 the Immigration and Naturalization Service (INS) issued a notice to appear, charging them with being subject to removal. Kondakova filed an application for asylum (which was also deemed to be an application for withholding of removal) on the basis of religious persecution. Kondakova was born in Kiev, Ukraine, in 1972. She and her husband, who is also a citizen of the Ukraine, married in 1994, and they have two young children (their daughter Olga Yrievna Kondakova was born in the Ukraine; the second child was born in the United States). Kondakova has been a member of the Seventh Day Adventist Church since 1980. She graduated from the Kiev University in 1996 with degrees in hydrogeology and mineralogy and qualified to work as an engineer. She taught Russian language and literature at a Seventh Day Adventist Church day school in Kiev from 1993 to 1996.

At the administrative hearing before the immigration judge, Kondakova testified about several incidents of religious persecution she suffered in the Ukraine. She testified that she was mocked and taunted as a child, and that in 1982 she and her sister were arrested and her mother was confined to a mental institution for 14 days (as a means of intimidating the mother). She also testified that in 1992 she was arrested and imprisoned overnight by the KGB for distributing religious literature, and that she was beaten while in jail. She also testified that the church day school was

-2-

vandalized in the spring of 1994. The vandals broke windows, wrote graffiti on the walls and left an anti-religious note on the door. In September 1994 a rock wrapped in a threatening note was left at the school. The note stated that the next time it would be a grenade rather than a rock. Kondakova testified that when she complained to the ministry of security about the vandalism and official indifference, the government investigator detained her for several hours. She also testified that one of her university instructors was biased against Adventists and she had to switch professors in order to pass the course.

Kondakova also testified that on June 26, 1995, her infant daughter was kidnapped. She testified that this traumatic event prompted her to come to the United States. She testified that when she went to the militia to report the kidnapping, the head of the militia made a disparaging remark about her religious beliefs. She testified that, when she returned home, she found a note that said she did not deserve a daughter because of her religion. She testified that the militia called and said that they had the child. Kondakova testified that her daughter was left on the doorstep with a note that said that they wondered which is more important to people, their children or their faith, and that they will have to choose.

Kondakova also testified that the government closed the church day school in September 1995 because the school name was religious and because there were prohibitions against Bible study. She also testified that the church day school is now open but that it had been closed and reopened on various occasions.

She also testified that on March 20, 1996, her husband was beaten up. She testified that her husband gave financial support to the church day school and that she believed that was the reason for the beating. Her husband testified that in 1993 he bought oil products that he left in the possession of a state organization. He testified that the state organization later became private and there was a dispute about the ownership of the products. There was litigation about the dispute and he ultimately won the case. He testified that he did not know the identity of his attackers or the

motive. However, he acknowledged that in the asylum application he indicated that the defendant firm had hired racketeers to "deal with his family." He also testified that he opposed the current Ukrainian government.

The immigration judge (IJ) concluded that petitioners failed to produce sufficient or concrete direct evidence to show that they have a well-founded fear of religious persecution. The IJ specifically found that petitioners' testimony was not "sufficiently detailed, consistent or believable to provide a plausible and coherent account of the basis for [their] fears." Slip op. at 12 (transcript of oral decision). In particular, the IJ noted that "all of the major incidents described in their testimony relating to the incidents of religious persecution were not even mentioned in the initial asylum application." Id. Kondakova explained that a neighbor helped her prepare the application and that she did not know exactly what incidents had been included in the application, that she did not read or write English, and that she did not want to relive the traumatic events. The IJ did not credit the explanation. Id. at 12-13 (noting that the most serious incident, the kidnapping of their daughter, was not included in the application, and that petitioners are highly educated and reasonably should have been expected to insure that the information in the application was complete and accurate). The IJ was also concerned about the absence of any documentation about any of the incidents. Id. at 13 (noting, for example, that petitioners did not submit any police reports about the kidnapping).

The IJ also found that the incidents did not amount to persecution and that petitioners failed to show that the incidents were the result of their religious beliefs. Id. at 14. The IJ also noted that Kondakova's testimony about the status of the church day school was confusing. Id. at 15 (noting that Kondakova testified that the school was closed by the government in September 1995 but that she taught at the school until June 1996). The IJ also found that petitioners' claims of religious persecution were not consistent with the 1997 country conditions reports prepared by the Bureau of Democracy, Human Rights and Labor and the United States State Department, which reported no evidence of harassment or persecution of Evangelical Christians

in the Ukraine, or with the experience of Kondakova's mother who served as an elected government official. Id. The IJ also noted that petitioners failed to establish countrywide persecution, that is, that they would be persecuted in another part of the country. Id. at 16. Finally, the IJ noted that because petitioners failed to satisfy the lower burden of proof for eligibility for asylum, they also failed to satisfy the higher burden of proof for eligibility for withholding of removal. Id. The IJ granted petitioners voluntary departure.

The Board summarily affirmed the decision of the IJ, and this petition for review followed.

> The [Board's] determination that an alien is not eligible for asylum or withholding of [removal] is reviewed for substantial evidence, and may not be overturned unless "the evidence was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." "Under this standard, this court must determine whether, based on the record considered as a whole, the [Board's] decision was supported by reasonable, substantial, and probative evidence." This court defers to an immigration judge's [adverse] credibility finding where the finding is "supported by a specific, cogent reason for disbelief."
>
> Under the Immigration and Nationality Act, the Attorney General has the discretion to grant asylum to a refugee, defined as a person who is unable or unwilling to return home "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." "In most cases, the critical inquiry is whether the applicant has a well-founded fear of future persecution upon return to his or her country." The applicant must demonstrate a fear that is subjectively genuine and objectively reasonable. For an alien's fear of persecution to be objectively reasonable, the fear must have a basis in

reality and must be neither irrational nor so speculative or general as to lack credibility. "The applicant is entitled to a presumption of a well-founded fear of future persecution if past persecution is established, and the burden then shifts to the [government] to show by a preponderance of the evidence that 'conditions in the applicant's country . . . have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he or she were to return.'"

Perinpanathan v. INS, 310 F.3d 594, 597-98 (8th Cir. 2002) (citations omitted).

Kondakova argues that her testimony provided the requisite specific and detailed incidents of religious persecution and, even though some of the incidents were not included in the asylum application, she mentioned some of them generally. She argues that the inconsistencies were due to a combination of a neighbor's assistance in filling out the application, their lack of proficiency in English, and their ignorance about what to include in the application. She also argues that she does not need corroborating evidence to establish her credibility given the specific and detailed nature of her testimony. She also argues that her specific and detailed testimony contradicts the State Department's country conditions report.

The IJ noted the numerous inconsistencies between petitioners' testimony and the asylum application as the basis for the adverse credibility determination. While minor inconsistencies and omissions will not support an adverse credibility determination, inconsistencies or omissions that relate to the basis of persecution are not minor but are at "the heart of the asylum claim." Chebchoub v. INS, 257 F.3d 1038, 1043 (9th Cir. 2001) (citation omitted). Here, as noted by the IJ, petitioners' asylum application did not refer to the most serious incidents of religious persecution, specifically, Kondakova's arrest in 1992, the incidents of vandalism at the church day school in 1994, or the kidnapping of her daughter in 1995. Kondakova did not present any documentation of these incidents, such as copies of the police reports or the

threatening notes.  These incidents are not minor but go to the heart of her claims of religious persecution.

Kondakova argues that corroboration is not essential to establish credibility, citing Sotelo-Aquije v. Slattery, 17 F.3d 33 (2d Cir. 1994).  We believe that case is distinguishable.  In that case, the Board found that the applicant was credible.  Id. at 37 n.2 (noting that, with credible testimony, applicant need not present other corroborating evidence to establish eligibility for asylum). "[An applicant's] testimony, if credible, may be sufficient to sustain his [or her] burden of proof without corroboration.  However, . . . 'if the trier of fact either does not believe the applicant or does not know what to believe, the applicant's failure to corroborate his [or her] testimony can be fatal to his [or her] asylum application.'" Chebchoub v. INS, 257 F.3d at 1042 (citation omitted).  Here, the IJ found that Kondakova was not credible and her failure to provide any corroborating documentation seriously undermined her claims of religious persecution.

Kondakova also argues that the State  Department's country conditions report is not binding, citing Gailius v. INS, 147 F.3d 34 (1ˢᵗ Cir. 1998).  In that case the IJ found that the applicant's testimony was inconsistent with the general country conditions.  Because the applicant's testimony about the threats to his family was corroborated by specific documentary evidence, including copies of the threatening letters and an affidavit of his father, the court of appeals held that the IJ could not reject the applicant's testimony on the basis of the general country conditions and instead must also determine that the other evidence was not genuine or, for some other adequate reason, not persuasive. Id. at 45. "[G]eneral changed country conditions . . . . are relevant in assessing an applicant's credibility because an uncorroborated story that is at odds with what is known about country conditions is less likely to be accurate than one that is consistent with country conditions." Id. n.6.  Here, as in Gailius, the IJ concluded that Kondakova's testimony was inconsistent with the State Department's country conditions report.  However, unlike the applicant in Gailius, Kondakova did not produce any corroborating documentary evidence of the major

incidents of alleged religious persecution or any evidence of changed country conditions.

In sum, Kondakova's omissions, inconsistencies and failure to provide corroborating evidence provided specific and cogent reasons to support the IJ's adverse credibility determination, and those reasons are supported by substantial evidence in the record.

We agree with the IJ that Kondakova failed to show past persecution or a well-founded fear of future persecution on account of religion. Persecution "involves 'the infliction or threat of death, torture, or injury to one's person or freedom, on account of' one of the enumerated grounds in the refugee definition. The mere presence of some physical harm does not require a finding of past persecution." Tawm v. Ashcroft, 363 F.3d 740, 743 (8th Cir. 2004) (citation omitted). Kondakova testified that she was taunted as a child and was insulted by the militia and government officials. Slurs and harassment do not constitute persecution. See, e.g., Fisher v. INS, 291 F.3d 491, 497 (8th Cir. 2002). Kondakova also testified that she was briefly detained several times, that she was beaten up while in jail but did not require medical attention, and that her husband was beaten up. "[M]inor beatings and brief detentions, even detentions lasting two or three days, do not amount to [religious] persecution, even if government officials are motivated by [religious] animus." Eusebio v. Ashcroft, 361 F.3d 1088, 1091 (8th Cir. 2004) (citations omitted). Kondakova failed to produce any evidence to document or corroborate any connection between the kidnapping and her religion. The fact that Kondakova remained in the Ukraine for a year after the kidnapping and completed her university education weighed against a finding of past persecution. See, e.g., Fisher v. INS, 291 F.3d at 497. In addition, although Kondakova testified that she believed that her husband was beaten up because of his financial support of the church day school, her husband did not testify about a religious motive, and the asylum application attributed the beating to a commercial dispute and litigation. Kondakova also testified that the government forced the church day school to remove the religious reference from the school name

and curriculum. However, there was no evidence that petitioners were unable to practice their religion or that the government treated other private schools differently. See, e.g., Bucur v. INS, 109 F.3d 399, 405 (7th Cir. 1997) (noting that forbidding practice of religion and closing all of religious sect's schools but no other private schools would be persecution).

Because petitioners failed to demonstrate past persecution, they are not entitled to a presumption of future persecution and "must independently establish a well-founded fear of future persecution, based on both objective and subjective elements." Tawm v. Ashcroft, 363 F.3d at 743 (citation omitted). "[The applicant] must genuinely fear persecution and must provide credible, specific evidence that a reasonable person in his [or her] position would fear persecution if returned." Id. Kondakova failed to show that her fear of future persecution was either well-founded or reasonable. As noted by the IJ, Kondakova's claims of future religious persecution are inconsistent with the country conditions reports (which she did not rebut), her mother's service as an elected government official (despite the mother's religious affiliation), and the apparent reopening and continued operation of the church day school. Cf. Manivong v. District Director, 164 F.3d 432, 433 (8th Cir. 1999) (noting fear of future persecution may not be objectively reasonable if immigrant attends school and works in home country and family lives there for years without incident).

Finally, the IJ did not err in holding that petitioners failed to satisfy the requirements for withholding of removal.

> Withholding of removal involves a higher degree of certainty that persecution will occur than that required for asylum eligibility. Before the government will grant withholding, the alien must present evidence to establish that it is "more likely than not that the alien would be subject to persecution on one of the specified grounds." This standard requires an objectively established "clear probability."

Tawm v. Ashcroft, 363 F.3d at 744 (citation omitted).  Because Kondakova failed to carry the lesser burden of proof to demonstrate asylum eligibility, she necessarily failed to meet the higher burden of proof required for withholding of removal.

Accordingly, the petition for review is denied.

_____