# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1524

_____

Hong Zhang Cao,                              *
                                             *
            Petitioner,                      *
                                             *  Petition for Review of an Order
      v.                                     *  of the Board of Immigration Appeals.
                                             *
Alberto R. Gonzales, United States          *
Attorney General,                            *
                                             *
            Respondent.                      *

_____

Submitted: December 16, 2005
      Filed: March 24, 2006   (Corrected: 3/30/06)

_____

Before MELLOY, COLLOTON, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

        Hong Zhang Cao ("Cao") seeks review of a final order of removal by the Board of Immigration Appeals ("BIA"). The BIA summarily affirmed, without separate opinion, the decision of an immigration judge ("IJ") denying Cao's applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We affirm the judgment of the BIA.

## I.

Cao, a native and citizen of China, entered the United States on or about April 5, 2000, under the Visa Waiver pilot program. Cao requested asylum, withholding of removal, and protection under CAT. Cao is married to a Chinese national and has two children. Cao claims past persecution and a fear of future persecution because of a forced abortion and forced sterilization performed on his wife.

The facts outlined in this section are as described by Cao. In Section II, we discuss some discrepancies between Cao's testimony and documentary evidence in this matter. Cao testified that he had a customary wedding ceremony with his wife on December 4, 1987. However, he stated that his marriage was not registered until later because he was not legally permitted to marry his wife in 1987. Cao stated that a woman must be twenty-two years old before she could be legally married and she was only sixteen years old at the time of the customary wedding.

According to Cao's testimony, his first child was born in Changle City. After the child was born, the Village Women's Committee came to his house to have an intrauterine device ("IUD") inserted into his wife. The insertion was initially delayed because his wife was experiencing heavy bleeding. However, the Women's Committee returned two months later and the IUD was inserted.

At some point later, Cao's wife experienced heavy bleeding while at work. She went to the bathroom and realized that the IUD had come out. Cao and his wife did not tell anyone about the IUD coming out because they feared the government would believe they had removed it. Soon after this incident, in March 1992, Cao's wife became pregnant again.

On July 13, 1992, Cao registered his marriage with his wife. Despite Cao's statement that he could not legally marry his wife until she was twenty-two, he was able to register his marriage while she was still twenty-one years old. At the time Cao brought his wife to have their marriage registered, she was five-months pregnant. The pregnancy was in clear violation of China's family planning policies, but the government official registering the marriage either did not notice Cao's wife's pregnancy or chose to ignore it.

In August 1992, the Women's Committee allegedly forced Cao's wife to have an abortion. Cao produced an abortion certificate to support his testimony on this point. The Women's Committee also told Cao's wife that they were going to sterilize her. Cao's family moved to the Guanzhou Province to evade the local authorities' attempts to sterilize Cao's wife. However, the village leaders of their previous community were able to track Cao and his family. Cao's family received a letter from their old village leaders requesting that they return for a pregnancy test. The letter stated that Cao's wife was to undergo a pregnancy test every three months or be sterilized. Cao's wife agreed to submit to regular pregnancy tests.

In October 1992, Cao and his wife returned to Changle City for the scheduled pregnancy test. They discovered that Cao's wife was pregnant again. Cao and his wife wanted to raise the child and did not want an abortion. As a result, they fled to Ba Yun (another village in Guanzhou) to have the child. The pregnancy ended with the birth of Cao's second child.

In September 1998, Cao's father-in-law was dying of cancer in Changle City. Cao and his wife decided to go to see her father. After they arrived, Cao's father-in-law passed away. Two days after his death, a policeman and a woman arrived at the family house in Changle City and took Cao's wife away to be sterilized. Cao argued with the authorities and was taken into custody for resisting

arrest.  After he was released from custody, he discovered that his wife had been sterilized.

Soon after the sterilization, Cao attempted to leave China.  He was arrested in Taiwan for not possessing a passport or visa.  Authorities sent Cao back to China where he served a prison term of one year and four months.

When Cao was released from prison, he could not return to Changle City because his family home had been destroyed by the Chinese government.  Instead, Cao continued in his efforts to leave China.  Cao went to Macau, obtained a tourist passport under an alias, and left China for the United States.  On his I-94 form, Cao stated that he was a citizen of Portugal, not a citizen of China.  He testified that he lied about his identity to gain admission to the United States because he had been denied a passport under his real identity.  Cao believes that if he returns to China, he will be imprisoned for explaining "what's going on inside China."

On July 18, 2003, an immigration hearing was held to evaluate Cao's claims. The IJ denied all of Cao's claims because the IJ found Cao's testimony to be not credible.

## II.

When the BIA affirms the decision of the IJ without opinion, as in the present case, we treat the decision of the IJ as the final agency decision. Mompongo v. Gonzales, 406 F.3d 512, 513 (8th Cir. 2005).  We will uphold an IJ's determination denying asylum unless "the evidence . . . presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution."  INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).  The Elias-Zacarias standard was subsequently codified such that a BIA finding of fact is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. §1252(b)(4)(B).  "We review the BIA's legal

determinations de novo but recognize that its interpretation of the [Immigration and Nationality Act] is entitled to deference." Nyirenda v. INS, 279 F.3d 620, 623 (8th Cir. 2002). We defer to an IJ's determination of the petitioner's credibility if the IJ had a "specific, cogent reason for disbelief." Ghasemimehr v. INS, 7 F.3d 1389, 1391 (8th Cir. 1993).

III.

To be granted asylum, a petitioner must prove that he or she is unwilling or unable to return to his or her home country because of past persecution or he or she has a well-founded fear of future persecution based on race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). In a case where forced sterilization and/or abortion is the basis of a male petitioner's claim, we allow him to stand in the shoes of his wife in claiming persecution. See In re C-Y-Z-, 21 I.&N. Dec. 915, 917-18 (BIA 1997).

In this case, the IJ denied Cao's claims of past and fear of future persecution because the IJ found Cao's testimony not credible. The IJ outlined five reasons for its adverse credibility finding. We address each of those reasons below.

The IJ's first two reasons for questioning Cao's credibility concern the details of Cao's marriage. First, the IJ noted a material discrepancy relating to the date of Cao's customary marriage. Second, the IJ was concerned about the inconsistency in Cao's testimony about the legality of his marriage. Cao testified that his customary marriage ceremony was on December 4, 1987. However, an affidavit from his wife stated that the marriage was on February 10, 1988. Further, Cao testified that he could not legally marry his wife until she was twenty-two years old. However, when they registered their marriage, she was only twenty-one years old.

The mere existence of inconsistencies in the record does not preclude a petitioner's claim of persecution. See Sheikh v. Gonzales, 427 F.3d 1077, 1080 (8th Cir. 2005) (noting that minor inconsistencies which do not go to the core of the claim of persecution will not support an adverse credibility finding). Since nothing in the record denies that Cao is married and the date of his marriage registration is not material to this matter, the discrepancies about the date of the marriage alone cannot support an adverse credibility finding.

Third, the IJ found Cao's testimony about the registration itself not credible. When Cao and his wife went to register the marriage, his wife was five months pregnant. The IJ found it implausible that the government official registering the marriage did not notice or object to Cao's wife being pregnant. However, the IJ's conclusion on this issue is based only on speculation. Speculation and conjecture are insufficient for an IJ to render an adverse credibility finding. See Kaur v. Ashcroft, 379 F.3d 876, 887 (9th Cir. 2004).

There is nothing in the record to indicate that Cao's wife was visibly pregnant at that time. Further, it is certainly reasonable that a woman can be five-months pregnant and disguise that fact to someone during a very brief ceremony. Also, Cao noted that the wedding administrator is from a different part of the government than those charged with enforcing family planning regulations. Consequently, the official may have felt no obligation to discover or report an illegal pregnancy. Therefore, we do not find this part of the IJ's adverse credibility finding to be persuasive.

Fourth, the IJ noted that Cao's affidavit does not mention that she underwent a forced abortion and sterilization. The IJ found this omission to be significant in its seeming inconsistency with Cao's testimony. An omission alone is normally insufficient for an adverse credibility finding, but if it goes to the "heart of the asylum claim," it does raise a credibility issue. Kondakova v. Ashcroft, 383 F.3d

792, 796 (8th Cir. 2004) (quoting Chebchoub v. INS, 257 F.3d 1038, 1043 (9th Cir. 2001)). Because the forced abortion and sterilization is central to Cao's asylum claim, this omission from his wife's affidavit is notable.

Fifth, the IJ relied upon inconsistencies between Cao's statements and the Asylum Profile from the State Department of the Fuijan Province. In the Asylum Profile, there were no reports of forced sterilizations and abortions in the region. Also, the report stated that abortion certificates, like the one produced by Cao, were only issued for voluntary abortions. These inconsistencies are of a substantive nature and go to the key issues in Cao's asylum claim. Cao has offered no concrete evidence in support of his testimony regarding the forced enforcement of China's family planning policy in the Fuijan Province. Without such evidence, there was reason for the IJ to question the credibility of Cao's testimony about the issue. See Chen v. INS, 195 F.3d 198, 204 (4th Cir. 1999) (noting that "an applicant must proffer some additional evidence that his fears of [the Chinese family planning] policy are objectively reasonable").

While some of the reasons offered by the IJ for an adverse credibility finding would be legally insufficient standing alone, there exists substantial evidence to support the finding. The inconsistencies and omissions in Cao's testimony and documentary evidence combined with the discrepancies between the State Department reports and Cao's testimony are sufficient to support the IJ's credibility finding.

IV.

Because Cao has failed to meet the lower standard for asylum, he necessarily fails to meet the higher standard for withholding of removal. Turay v. Ashcroft, 405 F.3d 663, 667 (8th Cir. 2005). The finding denying asylum for Cao does not necessarily mean we should deny his claims under CAT. However, the adverse

credibility finding as to the underlying facts of Cao's asylum claim applies to his CAT claim as well.

## V.

For the foregoing reasons, we deny the petition for relief.

_____