# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1541

_____

| | | |
|---|---|---|
| Qiu Yun Lu, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review |
| v. | * | of an Order of the |
| | * | Board of Immigration Appeals. |
| Alberto Gonzales, Attorney General | * | |
| of the United States of America, | * | [UNPUBLISHED] |
| | * | |
| Respondent. | * | |

_____

Submitted: May 30, 2006
Filed: June 7, 2006

_____

Before ARNOLD, BYE, and SMITH, Circuit Judges.

_____

PER CURIAM.

Qiu Yun Lu, a citizen of China, petitions for review of an order of the Board of Immigration Appeals, which summarily affirmed an Immigration Judge's (IJ's) denial of asylum, withholding of removal, and relief under the Convention Against Torture (CAT).[1]  We grant the petition.

_____

[1]Where the BIA summarily affirms, this court reviews the IJ's decision as the final agency determination.  See Hoxha v. Gonzales, 432 F.3d 919, 920 (8th Cir. 2006).

In March 2001 the former Immigration and Naturalization Service (INS) charged Lu with being removable for failing to have valid entry documents. Lu applied for asylum, alleging that she and her husband Lan Xiu Zhong had one child, and she had been forced to abort a pregnancy and to use an intrauterine device (IUD). Following a hearing in January 2002, the IJ denied asylum, withholding of removal, and CAT relief after finding Lu not credible because her case did not "track" Zhong's as evinced by discrepancies between her allegations and Zhong's--who was denied asylum by a different IJ in 1998--and because a September 1995 family-planning notice Lu had submitted was determined to be counterfeit and Lu had failed to present documentation to challenge or overcome the investigation result.

We review an IJ's findings regarding asylum eligibility under a substantial-evidence standard and we generally defer to an IJ's credibility finding when it is supported by specific, cogent reasons for disbelief. See Eta-Ndu v. Gonzales, 411 F.3d 977, 982 (8th Cir. 2005). Here, the IJ's adverse credibility determination is not entitled to deference. See Chen v. Gonzales, Nos. 04-3730, 04-3731, 2006 WL 1235909, at *8-*9 (6th Cir. May 10, 2006) (granting petition and remanding where IJ's credibility determination was not supported by substantial evidence in record).

We conclude that the discrepancies noted by the IJ are not supported by the record. See El Moraghy v. Ashcroft, 331 F.3d 195, 205 (1st Cir. 2003) (although IJ's credibility determinations are entitled to deference, that deference is conditioned on support in record). The first discrepancy noted by the IJ was that Zhong's testimony on the voluntariness of Lu's abortion was equivocal. Zhong testified that in June 1992 "when [village officials] saw [Lu's] pregnancy . . . they said . . . you have not reached the age yet and you haven't had your marriage certificate done yet," and thus Lu was forced to undergo an abortion. Zhong was asked whether Lu had agreed to the abortion, and he replied that she "agreed . . . because the government demanded . . . [and] she couldn't help it." Lu testified that, because in June 1992 she did not have a marriage certificate as she was only 19, she was forcibly transported to a hospital

where she was forced to abort her pregnancy. The couple's testimony about the timing and reasons for the abortion is largely consistent and we do not see how agreeing to an abortion because it is "demanded" could be viewed as anything but involuntary. State Department reports provide support for Lu's allegations. The reports state that China's minimum marriage age is 20 for females, that it is illegal for an unmarried woman to bear a child, and that forced abortions have occurred. See Dong v. Gonzales, 421 F.3d 573, 577-78 (7th Cir. 2005) (State Department report provided support for Chinese petitioner's allegation that she was forced to abort pregnancy because she was 19 and unmarried).

The second discrepancy the IJ noted was that Lu testified that Zhong got into a confrontation with family-planning authorities in March 1994 after the authorities attempted to force Lu to have an IUD inserted, afterwards she went to live with relatives, and in October Zhong left China--whereas Zhong testified that he left China in October 1994 because he had received a notice that he was subject to sterilization. We note that Zhong also testified, however, that in June or July 1994 Lu went to stay with relatives because a sterilization notice was received and Lu still desired to have another child; Zhong was unclear whether he, Lu, or his father was the subject of the sterilization notice and both Zhong's counsel and the IJ who presided at Zhong's hearing indicated that there appeared to be translation difficulties with Zhong's testimony. Again, although the details are different, the sequence of events is generally consistent. The third discrepancy noted was that Lu did not mention any trouble surrounding the birth of the couple's first child in November 1993, yet Zhong seemed to be suggesting that Lu had to escape a forced abortion to have the child. We have reviewed Zhong's testimony and the record does not support the IJ's finding: Zhong testified that he and Lu experienced no problems before the birth of their first child, and it was not until afterwards, in June or July 1994, that the couple was notified to undergo sterilization. A fourth discrepancy noted by the IJ--that it was odd that a sterilization request would be followed by an IUD request--is based on speculation. See Hong Zhang Cao v. Gonzales, 442 F.3d 657, 660 (8th Cir. 2006)

-3-

(speculation and conjecture cannot form basis of adverse credibility finding); Bandari v. INS, 227 F.3d 1160, 1167-68 (9th Cir. 2000) (IJ's belief about policies of foreign government amounted to nothing more than speculation and was impermissible basis for adverse credibility finding).

The IJ also doubted Lu's credibility because the September 1995 notice was determined to be fabricated and Lu did not present rebuttal documentation. Although the submission of a fraudulent document significantly undermines an alien's credibility, see Bropleh v. Gonzales, 428 F.3d 772, 777 (8th Cir. 2005), we cannot affirm the IJ's credibility finding on this basis. First, one of the two reasons given by the Birth Control Office of Hou Yu Township (BCO) for concluding that the notice was fabricated is that the word sterilization is misspelled; however, the translated English verison of the notice does not contain the word "sterilization" and the subject of the notice is IUD implantation, which is distinct from sterilization. Second, Lu offered an explanation as to why the BCO stated that the document was fabricated-- because the Chinese government is not likely to provide her documentation of its persecution of her--which the IJ did not address. See Pang v. Bureau of Citizenship and Immigration Servs., No. 03-40333, 2006 WL 1174082, at *3 (2d Cir. May 3, 2006) (although IJ is not required to credit petitioner's explanation, IJ is required to state reasons for rejecting explanation); cf. Bolanos-Hernandez v. INS, 767 F.2d 1277, 1285 (9th Cir. 1984) ("Persecutors are hardly likely to provide their victims with [documentation] attesting to their acts of persecution."). Third, the IJ failed to state what documentation Lu needed to submit to overcome the investigation result. Cf. Qiu v. Ashcroft, 329 F.3d 140, 153 (2d Cir. 2003) (in denying asylum claim for lack of corroboration to otherwise credible applicant, IJ must identify particular pieces of missing, relevant documentation, and documentation at issue must be reasonably available to petitioner).

For the reasons stated, we grant the petition for review, vacate the IJ's and BIA's decisions, and remand the case to the BIA for further proceedings consistent

with this opinion.  On remand the preservation of confidentiality during the investigation of Lu's documents, and the birth of Lu's second child, should be addressed.

_____