# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4131

_____

Hui Zhuang,                                    *
                                               *
                Petitioner,                    *
                                               *    Petition for Review of a Final
        v.                                     *    Decision of the Board of
                                               *    Immigration Appeals.
Alberto Gonzales, Attorney General             *
of the United States of America,               *
                                               *
                Respondent.                    *

_____

Submitted: September 29, 2006
Filed: December 22, 2006

_____

Before LOKEN, Chief Judge, SMITH, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Hui Zhuang, a citizen of China, petitions for review of a final order of removal by the Board of Immigration Appeals (BIA). The BIA summarily affirmed the decision of the Immigration Judge (IJ) denying Zhuang's applications for asylum, withholding of removal and relief under the Convention Against Torture (CAT). For the reasons discussed below, we deny Zhuang's petition.

## I. *Background*

Hui Zhuang, a native and citizen of China, entered the United States without inspection in 1990. In 1992, Zhuang filed an application for asylum, claiming that

because he violated China's one-child policy, he "got [sic] a lot of troubles and was fined a lot of money" and believed that he had "no freedom in human rights in China." The Immigration and Naturalization Service (INS) commenced removal proceedings against Zhuang in 1999. Zhuang conceded removability but renewed his request for asylum and also requested relief through withholding of deportation and protection under CAT. In Zhuang's renewed request for relief, he claimed past persecution and a fear of future persecution because he and his wife had violated China's one-child policy and his wife had been forcibly sterilized following the birth of their second child.

Zhuang married Bi Ying Zhang in China in 1984. In 1985, the couple had their first child, a daughter. In November 1986, they had a second child, a son. In December 1986, Zhuang's wife underwent a sterilization procedure. Zhuang alleges that the Chinese government forced his wife to undergo this procedure.[1] Zhuang came to the United States in January 1990, but his wife and children remained in China. In November 1996, Zhuang and his wife were divorced in China. In December 1996, Zhuang's ex-wife married a naturalized American citizen from China. As a result, Zhuang's ex-wife was issued an immigrant visa, and she and the children came to the United States in 1998. Zhuang's ex-wife's second marriage ended in divorce in 2002. She then applied for naturalization in 2004. In her application for naturalization, Zhuang's ex-wife indicated that she had returned to China for a visit in 2002, staying 37 days before returning to the United States.[2] The ex-wife and children are now United States citizens.

---

[1]Zhuang's initial application for asylum did not allege that his wife was forcibly sterilized.

[2]Zhuang's ex-wife's naturalization application does not reflect whether she was forcibly sterilized.

The final hearing on Zhuang's claims for relief was originally set for August 9, 2001, but due to several continuances, Zhuang's final merits hearing was not held until September 16, 2004. At the time of the final hearing, Zhuang and his ex-wife were working at the same restaurant, living in the same apartment building, and occasionally living in the same apartment. Because Zhuang's claims for relief were based on the forced sterilization of his ex-wife, the IJ had informed Zhuang at a previous hearing that his ex-wife's testimony would be extremely helpful on that issue. However, at the final hearing, Zhuang was the only witness to testify. Zhuang's ex-wife did not appear or testify nor did Zhuang provide an affidavit from her. Although Zhuang submitted documentary evidence that his ex-wife had been sterilized, the document did not reflect that the procedure was done involuntarily. The other documents provided by Zhuang were not properly certified as required by 8 C.F.R. 287.6, despite a prior warning from the IJ to Zhuang and his attorney about the certification requirements. As a result, the IJ gave the uncertified documents little or no weight.

At the conclusion of the hearing, the IJ denied Zhuang's requests for asylum, withholding of removal, and relief under CAT, finding that Zhuang lacked credibility and that he failed to prove that his ex-wife had been forcibly sterilized. Likewise, the IJ concluded that Zhuang had failed to prove fear of future prosecution and the likelihood of torture by the government if he was returned to China. The IJ also found that the country conditions in rural areas of China, such as Zhuang's home province, had changed, making it lawful for couples to have a second child if the first child was a girl. The BIA affirmed without comment. Zhuang filed a motion to reconsider, which was denied, and petitioned this court for review.

## II. *Discussion*

On appeal, Zhuang first argues that the IJ and the BIA erred in denying his asylum claim, request for withholding of removal, and relief under CAT. Zhuang's second argument is that his Fifth Amendment rights to due process regarding a full

-3-

and fair hearing were violated because the interpreter assigned to the final hearing was ineffective.

## A. *Due Process Claim*

As an initial matter, we lack jurisdiction to address Zhuang's due process claim, and we therefore dismiss that claim. *See Alyas v. Gonzales*, 419 F.3d 756, 761 (8th Cir. 2005). (holding that the court lacked jurisdiction to hear inadequate interpreter due process claim where petitioner argued to BIA that interpreter was inadequate, but failed to present due process argument). Zhuang asserts a due process deprivation based upon allegedly ineffective assistance from the interpreter provided for him at his final hearing before the IJ. However, Zhuang failed to present this argument to the BIA and jurisdiction before this court is thus lacking. *Id.* Although Zhuang noted in his Notice of Appeal that "the interpreter was not competent," he made no mention of a due process claim.

## B. *Standard of Review*

Turning to Zhuang's other claims for relief, we review questions of law de novo and review an IJ's fact determinations by applying the substantial evidence test. *Turay v. Ashcroft*, 405 F.3d 663, 666 (8th Cir. 2005). Under the substantial evidence test, "we must affirm if the IJ's decision is supported by reasonable, substantial, and probative evidence." *Id.* at 666–67 (citations omitted). We will only reverse factual determinations "if the petitioner demonstrates that the evidence was so compelling that no reasonable fact finder could fail to find in favor of the petitioner." *Id.* at 667 (citations omitted).

The BIA's decision to affirm the IJ without opinion "is committed to agency discretion and not subject to judicial review." *Ngure v. Ashcroft*, 367 F.3d 975, 983 (8th Cir. 2004). When the BIA affirms the decision of the IJ without opinion, the IJ's decision is treated as the final agency decision. *Cao v. Gonzales*, 442 F.3d 657, 659 (8th Cir. 2006). We must affirm the IJ's decision if it is supported by substantial

evidence on the administrative record as a whole. *Rife v. Ashcroft*, 374 F.3d 606 (8th Cir. 2004). When the IJ has denied asylum, withholding of removal, or relief under CAT, the petitioner "bears the heavy burden of showing that his evidence 'was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.'" *Melecio-Saquil v. Ashcroft*, 337 F.3d 983, 986 (8th Cir. 2003) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 483–84(1992)); *Onsongo v. Gonzales*, 457 F.3d 849, 852 (8th Cir. 2006); *see also* 8 U.S.C. § 1252(b)(4)(B). That standard is now codified in 8 U.S.C. § 1252(b)(4)(B). We defer to the IJ's determination of the petitioner's credibility if the determination is supported by a specific, cogent reason for the IJ's disbelief. *Cao*, 442 F.3d at 660; *Onsongo*, 457 F.3d at 852.

## C. *IJ's Credibility Determination*

The IJ gave several reasons for finding Zhuang not credible. The IJ noted Zhuang's inconsistent and vague testimony, in particular, contradictions between the country information and Zhuang's claims. The IJ also considered that Zhuang neither provided testimony or an affidavit from his ex-wife nor provided sufficiently authenticated documentary evidence.

Specifically, the IJ noted inconsistencies in Zhuang's testimony regarding his Chinese residence. Zhuang first testified that he continued to live in the same house as his wife and children until he came to the United States, but later Zhuang said that he temporarily moved for two to three years prior to leaving China. Because this testimony was largely immaterial to Zhuang's claims for relief, these inconsistencies alone do not vanquish Zhuang's claim of persecution. *See Cao*, 442 F.3d at 660; *Sheikh v. Gonzales*, 427 F.3d 1077, 1080 (8th Cir. 2005) (noting that minor inconsistencies which do not go to the core of the claim of persecution will not support an adverse credibility finding).

The IJ also considered Zhuang's ex-wife's failure to testify regarding the alleged involuntary sterilization significant. "An omission alone is normally insufficient for

an adverse credibility finding, but if it goes to the 'heart of the asylum claim,' it does raise a credibility issue." *Cao*, 442 F.3d at 661 (citing *Kondakova v. Ashcroft*, 383 F.3d 792, 796 (8th Cir. 2004) (quoting *Chebchoub v. INS*, 257 F.3d 1038, 1043 (9th Cir. 2001))). Because the forced sterilization of his ex-wife was central to Zhuang's asylum claim, the omission of any testimony or affidavit from her is material. Her absence is particularly puzzling when one considers that the ex-wife worked in the same restaurant and lived in the same apartment building, and occasionally even the same apartment as Zhuang. Moreover, the IJ had told Zhuang and his counsel at a previous hearing that the ex-wife's testimony regarding her sterilization would be important to his claim.

Additionally, the IJ relied on inconsistencies between Zhuang's statements and the objective country information. Although Zhuang alleged that his second child violated China's one-child policy, the country information indicated that when a couple's first child is a girl, the couple is permitted to try again to have a boy. The IJ noted that Zhuang and his wife first had a daughter and then a son in compliance with the policy. Zhuang would therefore not have been in violation of the policy. Whether the policy was violated goes to the core issue in Zhuang's asylum claim. *See Cao*, 442 F.3d at 661. Zhuang did not offer any persuasive evidence to support his testimony regarding his violation of China's one-child policy or China's enforcement of the policy when a couple first has a daughter then a son. "Without such evidence, there was reason for the IJ to question the credibility of [Zhuang's] testimony about the issue." *Id.* (citing *Chen v. INS*, 195 F.3d 198, 204 (4th Cir. 1999) (noting that "an applicant must proffer some additional evidence that his fears of [the Chinese family planning] policy are objectively reasonable")).

Viewing the record as a whole, we hold that the IJ's credibility assessment was supported by reasonable, substantial, and probative evidence. The inconsistencies and omissions in Zhuang's testimony and documentary evidence, combined with the

discrepancies between the country reports and Zhuang's testimony, are sufficient to support the IJ's credibility finding. *Cao*, 442 F.3d at 661.

## D. *Asylum*

In deciding most asylum cases, "the critical inquiry is whether the applicant has a well-founded fear of future persecution upon return to his or her country." *Perinpanathan*, 310 F.3d 594, 597–98 (8th Cir. 2002) (citing *Kratchmarov v. Heston*, 172 F.3d 551, 553 (8th Cir. 1999)). To be "well-founded," a fear must be both "subjectively genuine and objectively reasonable." *Id.*; *Feleke v. INS*, 118 F.3d 594, 598 (8th Cir. 1997). Subjectively, the alien must demonstrate, with credible evidence, that he genuinely fears persecution. *Feleke*, 118 F.3d at 598. This may be done with credible testimony. *Francois v. INS*, 283 F.3d 926, 930 (8th Cir. 2002). Objectively, the alien must show "credible, direct, and specific evidence that a reasonable person in the alien's position would fear persecution if returned to the alien's native country." *Feleke*, 118 F.3d at 598. This fear "must have [a] basis in reality and must be neither irrational nor so speculative or general as to lack credibility." *Perinpanathan*, 310 F.3d at 598. Fears of economic hardship or lack of opportunity do not establish a well-founded fear of persecution. *Feleke*, 118 F.3d at 598; *Minwalla v. INS*, 706 F.2d 831, 835 (8th Cir. 1983).

Where an alien establishes past persecution under one of the qualifying grounds, there is a presumption of a well-founded fear of future persecution on the same ground. *Francois*, 283 F.3d at 930; 8 C.F.R. § 208.13(b)(1). A person who has been forced to undergo involuntary sterilization is deemed to have been persecuted on account of political opinion. 8 U.S.C. § 1101(a)(42). Likewise, we allow a male petitioner to "stand in the shoes of his wife in claiming persecution" if his claim is based on the forced sterilization of the wife. *Cao*, 442 F.3d at 660. Thus, the husband of a woman who has been forcibly sterilized can establish past persecution and a presumption of a well-founded fear of future persecution if he can establish that the sterilization was involuntary. However, we are unaware of any authority that expands

this doctrine to cover a *former* spouse's involuntary sterilization, even if the sterilization was performed while the couple was married. But, because Zhuang failed to establish that his ex-wife's sterilization was involuntary, we need not address the possible expansion of the rule. Further, Zhuang's fear of persecution is significantly diminished by the fact that his ex-wife and children remained in China for over 11 years after the sterilization procedure without any proof of harm and that she returned to China in 2002, staying for 37 days, again without any indication of harm. *See Krasnopivtsev v. Ashcroft*, 382 F.3d 832 (8th Cir. 2004) (reasonableness of an asylum applicant's fear of persecution is diminished when family members remain in the native country unharmed).

### E. *Withholding of Removal*

An application for asylum automatically includes a request for withholding of removal. 8 C.F.R. § 1208.3(b); *Turay*, 405 F.3d at 667. "An alien may not be removed if the alien shows there is a clear probability that his 'life, or freedom would be threatened in [the alien's] country because of the alien's race, religion, nationality, membership in a particular social group or political opinion.'" *Turay*, 405 F.3d at 667 (quoting 8 U.S.C. § 1231(b)(3)(A)(1999)); *Ngure*, 367 F.3d at 989. The "clear probability of persecution" standard for withholding of removal is more rigorous than the well-founded fear standard for asylum. *Rife*, 374 F.3d at 613; *Wondmneh v. Ashcroft*, 361 F.3d 1096, 1099 (8th Cir. 2004). Thus, an alien who fails to prove eligibility for asylum cannot meet the standard for establishing withholding of removal. *Ngure*, 367 F.3d at 992. Accordingly, Zhuang's withholding of removal claim must fail. *Id.*; *Turay*, 405 F.3d at 667.

### F. *Convention Against Torture*

Under CAT, the petitioner must show that "it is more likely than not that he [] would be tortured if returned to the proposed country of removal." *Id.* (quoting *Perinpanathan*, 310 F.3d at 599); 8 C.F.R. § 208.16(c)(2). "In determining eligibility under CAT, 'all evidence relevant to the possibility of future torture should be

considered, including but not limited to: past torture inflicted upon the applicant; the applicant's ability to relocate to another area of the country where torture is unlikely; and gross, flagrant, or mass violations of human rights.'" *Turay*, 405 F.3d at 992 (quoting *Ngure*, 367 F.3d at 992); 8 C.F.R. § 208.16(c)(3). In light of the IJ's credibility determination, Zhuang's CAT claim fails also because the record does not support a finding that it is more likely than not that Zhuang would be tortured if returned to China.

## III. *Conclusion*

For the foregoing reasons, we deny the petition for relief.

_____