# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2413

_____

|  |  |  |
|---|---|---|
| Blanca Estela Villatoro, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of a |
| v. | * | Final Decision of the Board |
| | * | of Immigration Appeals. |
| Alberto Gonzales, | * | |
| | * | [UNPUBLISHED] |
| Respondent. | * | |

_____

Submitted: June 15, 2007
Filed: August 13, 2007

_____

Before MELLOY, SMITH, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Blanca Estela Villatoro petitions this court for review of an order by the Board of Immigration Appeals (BIA) summarily affirming the immigration judge's (IJ) denial of her applications for asylum and withholding of removal. After carefully reviewing the record, we deny Villatoro's petition for review.

## I. *Background*

Villatoro, a native and citizen of Guatemala, entered the United States without inspection on March 2, 1992. On October 11, 2000, the government commenced removal proceedings against Villatoro, charging her with being removable pursuant

to § 212(a)(6)(A)(I) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(A)(I).

Villatoro admitted all the factual allegations contained in the Notice to Appear and conceded that she was removable as charged. She applied for asylum and withholding of removal. According to Villatoro, she left war-torn Guatemala to find work. She applied for asylum based on her fear "of the violence in Guatemala." She claimed that "people were always being killed," murders were occurring "everyday," "there were a lot of robberies and theft," and "no justice" existed in Guatemala. According to Villatoro, violence in Guatemala is "everyday" and "constant."

Villatoro claimed that, in 1990 or 1991, five armed men robbed the cosmetic store where she worked. She alleged that even though the police were called, "they arrived late." She also claimed that on April 17, 1999—seven years after she left Guatemala—her brother-in-law, who organized a neighborhood watch group in response to gang activity, was murdered by gang members. She testified that the Guatemalan justice system convicted the perpetrator and sentenced him to 20 years in prison. According to Villatoro, the convicted murderer's mother threatened Villatoro's sister, telling the sister that when the mother's son was released from prison, he would seek revenge. She further testified that her cousin was also murdered by gangs on July 31, 1999; however, her cousin was not a member of the neighborhood watch group. Villatoro testified that her cousin was "good friends" with her brother-in-law.

At the end of Villatoro's hearing, the IJ asked Villatoro to specify which asylum ground she was seeking, as she did not do so on her application. She responded that she sought asylum based on her membership in the social group of "[t]hose being threatened by these gang members" and clarified that she was a "part of a social group that comprised of people who are threatened and physically harmed by particular gang members."

The IJ denied Villatoro's applications for asylum and withholding of removal. According to the IJ, Villatoro failed to establish that she suffered from "any form of mistreatment, physical or otherwise." As a result, the IJ found that she had not been a victim of past persecution.

Additionally, the IJ found that Villatoro failed to establish a well-founded fear of future persecution under any statutorily-enumerated ground, as "[t]he record d[id] not establish a nexus between [Villatoro's] fear of future persecution and her brother-in-law's anti-gang organizing activity that may have led to his murder in April 1999."

The IJ rejected Villatoro's argument that she was a member of a particular social group consisting of persons who are threatened or harmed by gang members, finding that "the record d[id] not either establish the existence of a social group within these parameters or demonstrate that individuals with these characteristics are at risk of being persecuted by either the government or a group that the government is unable or unwilling to control."

Finally, while the IJ found Villatoro to be credible, he determined that her fear of returning to Guatemala was "based upon generalized violence and crime," which does not "provide a basis for asylum eligibility." Because she was not eligible for asylum, the IJ found that she also failed to demonstrate eligibility for withholding of removal. The IJ granted Villatoro voluntary departure.

Villatoro appealed to the BIA, arguing that while she initially claimed asylum eligibility based on membership in a particular social group, she was eligible for asylum based on her "anti-gang political opinion." She claimed that she "still holds an anti-gang political opinion [and that] she fears that she would suffer a similar fate as her cousin and brother-in-law in Guatemala today." She argued that the IJ erred in concluding that she did not suffer past persecution and asserted that she did not fear

general violence but instead had a specific fear of gangs based on her anti-gang "political opinion." The BIA summarily affirmed the IJ's decision.

## II. *Discussion*

Villatoro argues that the IJ's decision denying her political asylum is not supported by substantial evidence, as the IJ erroneously examined her claim under a social group analysis instead of as an imputed political opinion case.

In response, the government argues that this court should deny Villatoro's petition for review because (1) she did not raise a political claim until she sought appellate review with the BIA[1]; (2) substantial evidence supports the IJ's conclusion that her fear of returning to Guatemala was based on general violence in that country and that no nexus exists between her fear of future persecution and her brother-in-law's anti-gang activity; (3) no evidence suggests that gangs in Guatemala would impute her brother-in-law's anti-gang political opinion to her or even that the gang is aware of her existence; and (4) her two sisters continue to live in Guatemala unharmed.

## A. *Standard of Review*

"When the BIA affirms the decision of the IJ without opinion, the IJ's decision is treated as the final agency decision." *Zhuang v. Gonzales*, 471 F.3d 884, 888 (8th Cir. 2006). If the IJ's decision is supported by substantial evidence on the administrative record as a whole, we must affirm the decision. *Id*. at 889. "When the IJ has denied asylum, withholding of removal, or relief under CAT, the petitioner bears the heavy burden of showing that [her] evidence was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id*. (internal quotations and citations omitted).

---

[1]According to the government, when she raised her political opinion claim to the BIA, she claimed that she had an "anti-gang political opinion." Now, on appeal to this court, she argues that the gang members would "impute" such an opinion to her.

B. *Failure to Claim Imputed Political Opinion on Asylum Application*

As a threshold matter, the government argues that Villatoro failed to raise her political opinion claim to the IJ and presented such claim for the first time on appeal to the BIA. In *Makarov v. Ashcroft*, 95 Fed. Appx. 841 (8th Cir. 2004) (unpublished), we "declin[ed] to consider [the petitioner's] argument that he was persecuted because of an imputed political opinion" because "[h]e did not claim on his asylum application that he was persecuted for his political opinion, he offered no testimony as to his political opinion (imputed or otherwise), and the IJ did not address such a claim." *Id.* at 842 (citing *Afolayan v. INS*, 219 F.3d 784, 788 (8th Cir. 2000) ("We lack jurisdiction to review claims that were not presented to the BIA in the first instance.")).

Here, Villatoro conceded in her appeal to the BIA that she never presented a political opinion claim to the IJ, stating that she "initially claimed to be eligible for asylum pursuant to a social group argument. However . . . [she now] believes that she instead is eligible for asylum based on a political opinion." As Villatoro never raised this argument before the IJ, as in *Makarov*, we decline to consider her claim that she was persecuted on account of imputed political opinion.

C. *Well-Founded Fear of Future Persecution*

Villatoro's claim also fails on the merits because she does not show a well-founded fear of future persecution. "The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who has applied for asylum . . . if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee. . . ." 8 U.S.C. § 1158(b)(1). A "refugee"is:

> any person who is outside any country of such person's nationality…
> who is unable or unwilling to return to, and is unable or unwilling to
> avail himself or herself of the protection of, that country because of
> persecution or a well-founded fear of persecution on account of race,

religion, nationality, membership in a particular social group, or political opinion. . . .

8 U.S.C. § 1101(a)(42)(A).

"The petitioner has the burden of showing refugee status." *Gemechu v. Ashcroft*, 387 F.3d 944, 947 (8th Cir. 2004) (citing 8 C.F.R. § 208.13(a)). Here, Villatoro concedes that she has not suffered past persecution; therefore, the issue is whether she has a well-founded fear of future persecution.

> To show a well-founded fear of persecution, the petitioner must demonstrate a fear that is subjectively genuine and objectively reasonable. For an alien's fear of persecution to be objectively reasonable, the fear must have basis in reality and must be neither irrational nor so speculative or general as to lack credibility.

*Id.* (internal quotations and citation omitted).

"Persecution is an extreme concept and low-level types of intimidation or harassment are not sufficiently severe." *Krasnopivtsev v. Ashcroft*, 382 F.3d 832, 839 (8th Cir. 2004). "[B]rief periods of detention, ethnic conflict, or isolated violence do not necessarily constitute persecution." *Id.* "[A] fear of general violence and unrest in [Guatemala]" does not "provide a basis for asylum eligibility under the INA." *Lopez-Zeron v. INS*, 8 F.3d 636, 638 (8th Cir. 1993). Additionally, "[t]he reasonableness of a fear of persecution is diminished when family members remain in the native country unharmed, and the applicant [herself] had not been singled out for abuse." *Krasnopivtsev*, 382 F.3d at 839.

When claiming persecution on account of political opinion, the petitioner must establish that the record "compels the conclusion that [s]he has a 'well-founded fear' [of persecution] *because of* that political opinion. . . ." *INS v. Elias-Zacarias*, 502 U.S.

478, 483 (1992) (emphasis in original). The petitioner "must provide *some* evidence" of her persecutors' motive, "direct or circumstantial." *Id*. (emphasis in original).

For example, in *Salazar v. Gonzales*, 178 Fed. Appx. 617 (8th Cir. 2006) (unpublished), we held that the petitioner failed to establish her eligibility for asylum because "[e]ven if guerrillas were responsible for her boyfriend's murder, and even if the guerrillas killed him because he was a bodyguard for an Army colonel, [the petitioner] did not testify or present evidence that these guerrillas therefore imputed a particular political opinion to her and threatened her because of the imputation." *Id*. at 618 (citing *Gomez v. Gonzales*, 425 F.3d 543, 545–46 (8th Cir. 2005) (stating that asylum applicants presented only a conclusory allegation that soldiers' motivation in beating them was related to imputed political opinion, where soldiers said nothing about applicants' political opinions and no other event supported such an imputation)).

Here, Villatoro has not met her burden to prove that she has a well-founded fear of persecution on the basis of imputed political opinion. First, she applied for asylum because of her "fear of violence" in Guatemala, as "people were always being killed" and there were "murders everyday." As stated in *Lopez*, a generalized fear of violence is insufficient to prove persecution.

Second, as noted in *Krasnopivtsev*, Villatoro's fear of future persecution is undermined by the continued safety experienced by her two sisters in Guatemala— including the sister whose husband was murdered.

Third, even though Villatoro testified that her sister received threats from the convicted murderer's mother, those threats were general in nature and amount to low-level intimidation and harassment.

Fourth, as in *Elias-Zacarias* and *Salazar*, Villatoro has provided no evidence, direct or circumstantial, that the gangs in Guatemala would impute to her an anti-gang

political opinion and persecute her on the basis of such opinion. She presented no evidence that the gangs in Guatemala even know of her existence, especially considering that she left Guatemala more than seven years before her brother-in-law was killed.

Finally, no evidence exists in the record explaining her cousin's murder. Villatoro testified that her cousin was not involved with her brother-in-law's neighborhood watch group, and she offered no testimony beyond the fact that her cousin was "good friends" with her brother-in-law to link her cousin's murder with the murder of her brother-in-law.

### III. *Conclusion*

Accordingly, we deny the petition.

_____